[Crim. No. 5162.   In Bank.   Apr. 17, 1951.]

THE PEOPLE, Respondent, v. JOHN ALBERT KERR, JR., Appellant.

William F. Docker and James H. Barstow for Appellant.

Fred N. Howser, and Edmund G. Brown, Attorneys General, and Walter L. Bowers, Assistant Attorney General, for Respondent.

SCHAUER, J.—This is an automatic appeal from a judgment which imposes the death penalty. (Pen. Code, § 1239b.) Defendant pleaded guilty to a charge of murder and the trial

judge, after hearing evidence, found that the crime was of the first degree and sentenced defendant to death. The judge filed a memorandum opinion which expresses his view that the murder was of the first degree both because it was committed in the perpetration of robbery and also because it was perpetrated by torture. We have concluded that the court erred in construing the facts attending the murder as constituting torture within the meaning of the law (Pen. Code, § 189) but that the finding that the murder occurred in the perpetration of robbery and, hence, is of the first degree, must be affirmed.

The evidence, including the testimony of defendant, may be fairly summarized as follows:

On July 1, 1950, defendant decided to ask his friend Troy Buckles for a loan of $200. Defendant wished to use this money in part to pay bills and in part to finance a three-day vacation trip with his fiancée. He went to the grocery store operated by Mr. and Mrs. Buckles, but did not then ask for the loan because other persons were present. On the morning of Sunday, July 2, defendant returned to the store. Defendant did not ask for the loan until all customers had left, Mrs. Buckles had gone on an errand, and Buckles had closed the store. It was then about noon. While Buckles was counting the cash and checks received, with defendant assisting him, defendant asked for the loan. Buckles refused because, he said, on previous occasions when defendant had borrowed from him the loans had not been repaid promptly. There followed an argument which grew more heated when Buckles, according to defendant's testimony, "said that all I was getting the money for was to spend it on my girl friend" and profanely and at some length expressed his opinion of defendant's conduct and the character of defendant's fiancée. Defendant seized a meat cleaver and struck Buckles on the head. Defendant took the cleaver and the box containing the cash and checks, put them under the seat of his car, drove to his fiancée's home, and they proceeded on their holiday trip.

Defendant contends that the evidence does not show murder in the perpetration of robbery. He relies upon his own testimony that when he struck the fatal blows he had no thought of money and was acting in anger because of Buckles' insulting remarks about defendant's fiancée and that the thought of taking the money occurred to him only after Buckles was fatally wounded. It is true that if defendant's

thoughts followed the course described by him the killing would not be first degree murder in the perpetration of robbery. (See *People* v. *Hardy* (1948), 33 Cal.2d 52, 59 [198 P.2d 865]; *People* v. *Sanchez* (1947), 30 Cal.2d 560, 569 [184 P.2d 673].) ▮▮ But the trial court was not required to accept defendant's testimony as being conclusive on his state of mind. A reasonable evidentiary basis for the finding contrary to defendant's testimony in respect to its subjective aspects is expressed in the memorandum opinion of the trial court:

"I am firmly convinced . . . that during the quarrel which preceded the blows the defendant formed the specific intent to get the money at any cost and that he struck the fatal blows for the purpose of disabling or killing Buckles and then robbing him. The money theme runs throughout this entire case. The defendant had been keeping steady company with . . . [his fiancée] for exactly a year. He stated that they planned to be married in September of this year. They had taken various trips together; to Las Vegas, to mountain resorts and to Santa Cruz. The Fourth of July holiday had been planned for a month and the defendant was definitely committed to the project, but needed more money. The temptation was too great. Buckles trusted him as a friend and asked him to assist him in checking the receipts. Over $400 in cash was right in front of him.

"It is my definite opinion that during the course of the fifteen minute argument while the money was being checked and counted the defendant conceived and then executed the plan to secure the money by robbery."

Defendant urges that the following circumstances make it unreasonable to infer that he struck Buckles with intent to take the money: Mrs. Buckles, when she left the store, had said that she would "be right back"; she and several customers knew that only defendant and Buckles were in the store; the store had large windows through which passers-by might readily have seen the commission of the homicide. In effect, this is an argument that defendant would not in anger form and carry out an intent to rob, heedless of the possible consequences of arrest and conviction. Upon the record it cannot be said as a matter of law that defendant would not have conducted himself in such an unreasonable manner or that the trial court's factual conclusions are not supported.

▮ The People properly concede that the murder was not by torture. The trial judge's conclusion that it was re-

sulted from his erroneous belief, stated in his opinion, that "A defendant who, after inflicting injuries which later prove fatal, abandons his victim and leaves him to die without medical or other assistance is guilty of murder by torture." There is language in *People* v. *Cardoza* (1943), 57 Cal.App.2d 489, 498 [134 P.2d 877], cited by the trial judge, which appears to support such statement. But, as is clear from the discussions of what constitutes torture found in *People* v. *Tubby* (1949), 34 Cal.2d 72, 77 [207 P.2d 51], and cases there cited, this is not the law and the contrary implication of the Cardoza case is disapproved.

Defendant asserts that at the hearing to determine the degree of the crime he was entitled to the same basic constitutional guaranties, and the burden of proof was the same, as in the case of a defendant who pleads not guilty and is tried; and his brief contains argument and authorities in support of this assertion. We agree with the stated propositions of law. But defendant does not suggest how an appellate court can pass on the question whether the testimony established his guilt beyond a reasonable doubt, rather than merely by a preponderance of the evidence. And defendant does not contend and it does not appear that he was deprived of any constitutional guaranties.

In arguing that the evidence is insufficient to show murder in the perpetration of robbery defendant says, "Appellant has been given no benefit of the rule that circumstantial evidence must lead to *one* reasonable hypothesis against the defendant before it can be so used, and that where there is more than one reasonable hypothesis resulting from circumstantial evidence, then the hypothesis favoring defendant shall be used. Furthermore, there is nothing in the evidence to overcome appellant's right to have the degree of his guilt proven beyond a reasonable ground of doubt." The rule as to circumstantial evidence and the requirement as to burden of proof are for application in, and primarily are the concern of, the trial court; an appellate court will not alter or hold unsupported the trial court's findings merely because it might reasonably draw an inference different from one the trial court reasonably drew, or might not be convinced beyond a reasonable doubt that it would have made the same findings.

Upon the record here we cannot hold that the trial court failed to give effect to the rules which defendant invokes. "[I]f the record affords substantial support [as it does here] for the conclusion that one of the enumerated felonies was

perpetrated or attempted, and the killing was committed in such perpetration or attempt, the judgment must be affirmed. [Citations.] After conviction all intendments are in favor of the judgment and a verdict will not be set aside unless the record clearly shows that upon no hypothesis whatsoever is there sufficient substantial evidence to support it. [Citations.]'' (*People* v. *Lindley* (1945), 26 Cal.2d 780, 791 [161 P.2d 227]; see, also, *People* v. *Gilbert* (1943), 22 Cal.2d 522, 530 [140 P.2d 9].)

For the reasons above stated the judgment is affirmed.

Gibson, C. J., Shenk, J., Carter, J., Traynor, J., and Spence, J., concurred.

Edmonds, J., concurred in the judgment.

Appellant's petition for a rehearing was denied May 14, 1951.