[Crim. No. 9872.   In Bank.   Jan. 9, 1967.]

THE PEOPLE, Plaintiff and Respondent, v. HARRISON
BUTLER, Defendant and Respondent.

George V. Denny III, under appointment by the Supreme Court, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Gordon Ringer, Deputy Attorney General, for Plaintiff and Respondent.

TRAYNOR, C. J.—Defendant was charged by information with the murder of Joseph H. Anderson and with assault with intent to murder William Russell Locklear. A jury convicted defendant of first degree felony murder and of assault with a deadly weapon; it fixed the penalty for the murder at death. This appeal is automatic. (Pen. Code, § 1239, subd. (b).)

■■■ We have determined that error in the guilt phase of the trial deprived defendant of his primary defense to the charge of first degree felony murder. The judgment of conviction of murder must therefore be reversed.

Joseph H. Anderson operated a catering service in Los Angeles at the time of his death, and William Locklear assisted him. On the evening of May 18, 1965, Locklear was at Anderson's home where he planned to remain for the night. He testified that the doorbell rang shortly after midnight while he was in the bedroom. He heard little for 20 to 30 minutes after that because he was in the shower. When he returned to the bedroom he heard Anderson call, "Bill, he's got a gun." Anderson then entered the bedroom followed by defendant, whose hand was in his coat pocket. Locklear did not see a gun until two or three minutes later when defendant produced one from "someplace." Anderson attempted to seize the gun, it fired and Anderson fell. Locklear tried to apprehend defendant but was himself shot and lost consciousness. Defendant was gone when Locklear regained consciousness.

Defendant testified that he met Anderson several weeks before the killing and that Anderson employed him on one occasion to do catering work. Anderson did not pay him for the work, and when he requested payment Anderson asked him to wait a few days. On the evening of May 18th, defendant went to Anderson's home to obtain payment. While the two were sitting in the living room discussing the debt, Anderson made an indecent proposal and, when defendant rejected it, offered to double the money he owed defendant. Defendant also refused this offer telling Anderson he needed his money and wished only to be paid.

Defendant also testified that at this point Anderson agreed to pay him, but they had two or three drinks together before Anderson started toward the bedroom to get the money. Anderson apparently changed his mind and returned to discuss

his earlier proposition. Defendant persisted in his refusal, and Anderson again went to the bedroom. Defendant testified that when he entered the bedroom a few seconds later, Anderson approached him with a pistol. He had not previously been aware of Locklear's presence, but he then saw Locklear lying on the bed. Defendant stated that he had armed himself before going to Anderson's home because he had heard stories about Anderson's brutality, and that when he saw a gun in Anderson's hand, he brought out his own to defend himself. Anderson called to Locklear that defendant had a gun and threw a towel or bathrobe at defendant. Defendant testified that he did not intend to shoot, but as the towel was thrown at him, Anderson grabbed his arm and the gun fired. After Anderson was shot, Locklear jumped up and as he came forward defendant shot him too. Defendant then ran to the living room and back to the bedroom where he looked for money. Finding none, he took a wallet and ran from the house.

No evidence of premeditation or deliberation was adduced by the prosecution. The court instructed the jury that since these elements were not present, it could find first degree murder only if defendant committed the killing in the perpetration of a robbery.

Defendant testified that he did not intend to rob Anderson when he went to the house, but intended only to recover money owed to him. Over his objection, the prosecutor argued to the jury, ''If you think a man owes you a hundred dollars, or fifty dollars, or five dollars, or a dollar, and you go over with a gun to try to get his money, it's robbery.'' And, ''If you go into a man's home and merely because he's supposed to owe you some money, you take money from him at gunpoint, you have robbed him.'' Again objecting to further argument by the prosecutor that a robbery was committed even if defendant believed Anderson owed him money, defendant suggested that a necessary element of theft, the intent to steal, was requisite to robbery, but was overruled by the court.

Defendant's objection was well taken. ''Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear.'' (Pen. Code, § 211.) An essential element of robbery is the felonious intent or *animus furandi* that accompanies the taking. (*People* v. *Rosen,* 11 Cal.2d 147, 149 [78 P.2d 727, 116 A.L.R. 991].) Since robbery is but larceny aggravated by the use of force or fear to accomplish the taking of property from the

person or presence of the possessor (*People* v. *Jones,* 53 Cal. 58, 59), the felonious intent requisite to robbery is the same intent common to those offenses that, like larceny, are grouped in the Penal Code designation of ''theft.''[1]　█　The taking of property is not theft in the absence of an intent to steal (*People* v. *Matlock,* 51 Cal.2d 682 [336 P.2d 505, 71 A.L.R.2d 605]), and a specific intent to steal, i.e., an intent to deprive an owner permanently of his property, is an essential element of robbery. (*People* v. *Ford,* 60 Cal.2d 772, 792 [36 Cal.Rptr. 620, 388 P.2d 892] ; *People* v. *Morlock,* 46 Cal.2d 141, 146 [292 P.2d 897] ; *People* v. *Sanchez,* 35 Cal.2d 522, 526 [219 P.2d 9].)

█　Although an intent to steal may ordinarily be inferred when one person takes the property of another, particularly if he takes it by force, proof of the existence of a state of mind incompatible with an intent to steal precludes a finding of either theft or robbery. It has long been the rule in this state and generally throughout the country that a bona fide belief, even though mistakenly held, that one has a right or claim to the property negates felonious intent. (*People* v. *Eastman,* 77 Cal. 171, 172 [19 P. 266]. See also Note 46 A.L.R.2d 1227; *People* v. *Gallegos,* 130 Colo. 232 [274 P.2d 608, 46 A.L.R.2d 1224] ; *Barton* v. *State,* 88 Tex. Crim. 368 [227 S.W. 317, 13 A.L.R. 147] and cases noted therein.) A belief that the property taken belongs to the taker (*People* v. *Devine,* 95 Cal. 227, 230-231 [30 P. 378] ; *People* v. *Vice,* 21 Cal. 344), or that he had a right to retake goods sold (*People* v. *Sheasbey,* 82 Cal. App. 459 [255 P. 836]) is sufficient to preclude felonious intent. Felonious intent exists only if the actor intends to take the property of another without believing in good faith that he has a right or claim to it. (*People* v. *Stone,* 16 Cal. 369.)[2]

---

[1] ''Every person who shall feloniously steal, take, carry, lead, or drive away the personal property of another, or who shall fraudulently appropriate property which has been entrusted to him, or who shall knowingly and designedly, by any false or fraudulent representation or pretense, defraud any other person of money, labor or real or personal property, or who causes or procures others to report falsely of his wealth or mercantile character and by thus imposing upon any person, obtains credit and thereby fraudulently gets or obtains possession of money, or property or obtains the labor or service of another is guilty of theft. . . .'' (Pen. Code, § 484.)

[2] Defendant concedes, as he must, that although the offense could not constitute robbery absent an intent to steal, an unprovoked assault accompanying an attempt to collect a debt may be a crime other than robbery. Among the range of offenses that might have been committed are: assault (Pen. Code, § 240), assault with a deadly weapon (Pen. Code, § 245), assault with intent to commit murder (Pen. Code, § 217).

574

█ Defendant testified that in going to Anderson's home "my sole intention was to try to get my money; and that was all." The jury was properly instructed that if the intent to take the money from Anderson did not arise until after Anderson had been fatally wounded, the killing could not be murder in the perpetration of robbery. (*People* v. *Carnine*, 41 Cal.2d 384, 388-389 [260 P.2d 16]; *People* v. *Kerr*, 37 Cal.2d 11, 14 [229 P.2d 777]; *People* v. *Hardy*, 33 Cal.2d 52, 59 [198 P.2d 865]; *People* v. *Sanchez*, 30 Cal.2d 560, 569 [184 P.2d 673].) █ Since the jury returned a verdict of first degree murder it believed defendant intended to take money from Anderson by force before the shooting occurred. Accordingly, defendant's only defense to robbery-murder was the existence of an honest belief that he was entitled to the money. The trial court's approval of the prosecutor's argument that no such defense exists removed completely from the consideration of the jury a material issue raised by credible, substantial evidence. It precluded any finding that an intent to steal was absent. Defendant has a constitutional right to have every significant issue determined by a jury. The denial of that right was a miscarriage of justice within the meaning of article VI, section 13█ of the California Constitution and requires reversal. (*People* v. *Conley*, 64 Cal.2d 310, 319-320 [49 Cal.Rptr. 815, 411 P.2d 911]; *People* v. *Gilbert*, 63 Cal.2d 690, 704 [47 Cal.Rptr. 909, 408 P.2d 365]; *People* v. *Modesto*, 59 Cal.2d 722, 730 [31 Cal.Rptr. 225, 382 P.2d 33].)

Since the question may arise again on retrial, we deem it advisable to consider defendant's contention that the court erred in permitting the prosecutor to exceed the proper scope of cross-examination and to comment on defendant's failure to bring before the jury on direct examination evidence that the prosecutor elicited in that cross-examination.

At the penalty phase of the trial defendant testified about his family and background. He described his education, his childhood, his church affiliation, and the occupations of his parents and brother. He admitted a prior felony conviction for burglary in Louisiana resulting in a 5-year penitentiary term. He told of a common law relationship through which he had become the father of a then 6-year-old daughter, of his vocational training, and of his activities since his release from the penitentiary three months before the killing. On cross-examination, over the objection of defendant, the prosecutor questioned him regarding an incident that had occurred while he

was imprisoned. Defendant testified that he had been involved in a fight and that another man had been killed. He contends that this questioning exceeded the proper scope of cross-examination because it related to crimes as to which no evidence had been introduced on direct examination. We do not agree.

"A defendant in a criminal action or proceeding cannot be compelled to be a witness against himself; but if he offers himself as a witness, he may be cross-examined by the counsel for the people as to all matters about which he was examined in chief. . . ." (Pen. Code, § 1323.) ██ Cross-examination may be employed to elicit any information that may tend to overcome, qualify, or explain the testimony given by a witness on direct examination (*People* v. *Dotson,* 46 Cal.2d 891, 898 [299 P.2d 875]) as well as to test his accuracy, recollection, knowledge or credibility. (*People* v. *Golden,* 55 Cal.2d 358, 368 [11 Cal.Rptr. 80, 359 P.2d 448].) ██ When a defendant has taken the stand in his own defense and the prosecution seeks to impeach him by showing that he has been convicted of a felony, the cross-examiner may not inquire into the circumstances surrounding the crime (*People* v. *David,* 12 Cal.2d 639, 646 [86 P.2d 811]), the punishment imposed, or the conduct of the defendant while imprisoned. (Cf. *People* v. *Wynn,* 44 Cal. App.2d 723, 732 [112 P.2d 979].) ██ These limitations do not apply, however, when a defendant takes the stand at the penalty phase of the trial and in his testimony seeks to acquaint the jury with the circumstances of his life from childhood to the time of the offense of which he has been found guilty. In such cases, cross-examination designed to bring out additional activities, be they criminal or otherwise, is within the scope of the direct examination. ██ The purpose of the direct examination was to elicit information that would persuade the jury that the pattern of defendant's life was such that he should not receive the death penalty. It was therefore proper to cross-examine him for the purpose of bringing out evidence of conduct inconsistent with the image of himself that he had constructed through his direct testimony. (*People* v. *Zerillo,* 36 Cal.2d 222, 228-229 [223 P.2d 223]; *People* v. *Westek,* 31 Cal.2d 469, 476 [190 P.2d 9].)

A defendant in a criminal proceeding cannot be compelled to be a witness against himself. (Cal. Const., art. I, § 13; Pen. Code, § 1323.) When he has taken the stand voluntarily, however, he waives this privilege and subjects himself to cross-examination as to all matters about which he testifies on direct

examination. (Pen. Code, § 1323; *People* v. *Gallagher,* 100 Cal. 466, 475 [35 P. 80].) Since we have determined that defendant was not required to testify on cross-examination to any matter not within the scope of his direct testimony, we do not reach his contention that the prosecutor's comment on his failure to bring out all of the information in his direct testimony infringed his privilege against self-incrimination. (*Griffin* v. *California,* 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229].) The comment to which objection is made related solely to matters as to which defendant had waived the privilege.

The judgment of conviction of murder is reversed. In all other respects the judgment is affirmed.

Peters, J., Tobriner, J., Burke, J., and Peek, J.,* concurred.

McCOMB, J.—In my opinion there was no prejudicial error. Therefore, under the provisions of Article VI, section 1█ of the California Constitution, I would affirm the judgment in its entirety.

MOSK, J.—I dissent.

Penal Code section 211 defines robbery as "the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." This code section was enacted in 1872 and has remained unchanged since that date.

It is significant that the section requires the taking be from the *possession* of another, and makes no reference whatever to *ownership* of the property.

The question here, then, is whether the defendant may assert *ipse dixit* his belief that he was entitled to an unpaid debt taken from another by force or fear as a defense to a charge of robbery, and by extrapolation as a defense to a charge of murder committed in the course of a robbery. While there is some authority suggesting this query be answered in the affirmative (*People* v. *Devine* (1892) 95 Cal. 227 [30 P. 378]; *People* v. *Vice* (1863) 21 Cal. 344; *People* v. *Stone* (1860) 16 Cal. 369),[1] there has been no explicit holding of this court on the issue.

---

*Retired Associate Justice of the Supreme Court sitting under assignment by the Chairman of the Judicial Council.

[1]*People* v. *Rosen* (1938) 11 Cal.2d 147 [78 P.2d 727, 116 A.L.R. 991], involved a robbery after a dispute over the fruits of a gambling episode. While the court referred to ownership of the property, it based its con-

Thus, the question is ultimately one of basic public policy, which unequivocally dictates that the proper forum for resolving debt disputes is a court of law, pursuant to legal process —not the street, at the business end of a lethal weapon. Had this defendant been entrusted with the contents of the deceased's wallet, and had he appropriated them to his own use, believing he was entitled to keep the funds in payment of wages or a debt, that belief would have furnished him no defense to a charge of embezzlement (Pen. Code, § 511; *People* v. *Proctor* (1959) 169 Cal.App.2d 269, 277 [337 P.2d 93]). By parity of rationale, the claim of offset denied to the trusted employee who dips into the company cashbox should be denied to one who, like this defendant, enforces his demands at gunpoint. To hold otherwise would be to constitute him judge and jury in his own cause.

It is significant that the basic cases permitting forcible recaption of property one believes his own were decided before the turn of the century. *Stone,* decided in 1860, involved larceny of a wagon and team; *Vice,* 1863, involved a faulty indictment; *Devine,* 1892, involved larceny of property actually in the defendant's possession, and in that context the court said one cannot intend to steal property which he believes to be his own.

In a bucolic western scene or in the woolly atmosphere of the frontier in the nineteenth century, the six-shooter may have been an acceptable device for do-it-yourself debt collection. If the law permitted a might-makes-right doctrine in that milieu, it is of dubious adaptability to urban society in this final third of the twentieth century.

I would rely upon the specific provisions of Penal Code section 211, which raise no issue of ownership of property forcibly taken, but only its possession. Here, possession of the money was in the deceased, and when it was taken from him by means of force, the crime of robbery was committed.

. However, even under the opinion of the majority that the defense theory was legally tenable and should have been submitted to the jury, I do not believe the error, if any, was of

clusion on the weight of authority which, it said (at p. 150), "supports the conclusion that the intent to steal is lacking in such a case, for the law recognizes no title or *right to possession* in the winner . . . the winner gains no title to the property at stake nor any *right to possession* thereof. . . ." (Italics added.) *People* v. *Sheasbey* (1927) 82 Cal.App. 459 [255 P. 836], involved recaption of property sold on installment payments, and the court spoke (at p. 463) of "ownership or at least the right of possession."

sufficient gravity to require a reversal of the murder count. (Cal. Const., art. VI, § 13█; *People* v. *Watson* (1956) 46 Cal.2d 818, 836 [211 P.2d 243].)[2]

I would affirm the judgment.

McComb, J., concurred.

Appellant's petition for a rehearing was denied February 8, 1967. McComb, J., was of the opinion that the petition should be granted.

___

[2]The defendant's testimony was riddled with internal inconsistencies and incongruities. It was inconsistent with the several conflicting accounts he gave to the police after being advised of his constitutional rights. It was inconsistent with other salient evidence established apart from his testimony and his extrajudicial statements: the curious fact that the gun he used and the car in which he rode, purportedly to collect a debt, were both stolen; the sinister fact that before he arrived at the house there was a telephone call in an obvious effort to determine whether anyone was in the Anderson home and the caller hung up without identifying himself when Locklear answered the call; the chilling fact that the defendant's car moved slowly down the street "stopping and checking" while Locklear hid in the bushes after his flight from the house.