[Crim. No. 14718.    Second Dist., Div. One.    Mar. 14, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. HARRISON BUTLER, Defendant and Appellant.

John R. Sheehan, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—Defendant was accused in count 1 of murder of Joseph H. Anderson, and in count 2 of assault with intent to murder William Russell Locklear. In a jury trial he was found guilty of murder of the first degree and guilty of assault with a deadly weapon, a lesser and included offense in count 2; and the jury fixed the penalty for the murder at death. On a prior appeal, the Supreme Court reversed the judgment of conviction of murder and affirmed the judgment in all other respects. (*People* v. *Butler*, 65 Cal.2d 569, 576 [55 Cal.Rptr. 511, 421 P.2d 703].) On retrial, the jury found defendant guilty of murder of the first degree and fixed the

penalty at life imprisonment. Defendant's notice of appeal will be regarded as an appeal from the judgment.

Appellant contends that the evidence does not support the verdict.

On May 17, 1965, about 10:30 p.m., Joseph H. Anderson, owner of a catering business, and William Russell Locklear, his assistant in that business, were at Mr. Anderson's home watching television. The telephone rang and Mr. Locklear answered it, at Anderson's request, but "somebody hung up." About an hour later, Locklear, who had taken a shower and was in the bathroom, heard the doorbell ring. He "didn't hear hardly any talking at all." While he was dressing, in the bedroom, he heard Anderson "holler": "Bill, he's got a gun." Then Anderson went into the bedroom, and was followed there by the defendant who had a gun "on" Anderson. Anderson tried to take the gun away from defendant, and defendant shot Anderson in the head. When Locklear attempted to help Anderson, the defendant shot Locklear. The bullet passed through Locklear's hand, entered his face, broke his jaw, and rendered him unconscious.

When Locklear became conscious, it seemed to him that defendant had left the house. Locklear tried to feel Anderson's pulse, and there "was no pulse beat." Locklear ran out of the house and saw a car, which appeared to be "a General Motors make" with two-tone colors, moving slowly, stopping, and then pulling up in the street. Two persons were in the car. Locklear hid in bushes by the house until the car went away, and then he went to a house next door, rang the doorbell, and told a lady there to call the police and an ambulance. Locklear testified that the car which he saw was similar to the car shown in the photograph, Exhibit 4 (photograph of Buick automobile with two-tone colors). Mr. Anderson died as a result of the bullet wound in his head.

Mr. Easlich testified that he had lent the Buick to Sidney Alexander on May 17, sometime between 9:30 and 10:30 p.m. Alexander did not return the car the next day, and Mr. Easlich telephoned the police and reported the car stolen. Later, the car was found abandoned in Pixley, California; and clothing belonging to defendant was found in the abandoned car. Mr. Easlich testified that he had not put defendant's clothes in the car.

Mr. Anderson's son testified that after his father was killed, his (father's) wallet, credit cards, and operator's license, were missing from his belongings.

Defendant was arrested in San Francisco. He had in his possession Anderson's wallet, credit cards, bankbook, and a check payable to Anderson. He also had a .32 Colt automatic pistol. A ballistic expert testified that he compared the spent bullet which had entered Anderson's head with a bullet fired from the pistol, and in his opinion the spent bullet had been fired from the pistol. Mr. Banks testified that the pistol had been stolen from his home on May 16.

Defendant testified in substance that he met Anderson about a week or two before Anderson was shot; he had done some catering work for Anderson, and Anderson had not paid him; in the evening of May 18, Sidney Alexander approached him in a coffee shop and asked whether he wanted to go for a ride; they went for a ride in the Buick, and he knew that the Buick did not belong to Alexander; he asked Alexander to stop at Anderson's house so that he might collect some money which Anderson owed him; neither he nor Alexander telephoned Anderson before they went there; they parked in front of Anderson's house, and Alexander gave him a gun; he put the gun into his pocket; he never intended to rob or shoot Anderson; he rang the doorbell, and Anderson came to the door; they talked in the living room and had a few drinks; he asked Anderson for the money which Anderson owed him; Anderson made indecent suggestions to him and offered to double the money if he would "go through with it"; he again asked for his money, and Anderson left the room; when Anderson returned, he again asked him for money, and Anderson started to go into the bedroom; he followed Anderson into the bedroom; Locklear was lying on a bed in the bedroom; and Anderson went to a closet and came back with a gun in his hand. (At previous trial he testified that Anderson had the gun when they entered the bedroom. Anderson's son testified that Anderson did not own a gun.) Defendant testified further that he was under the impression that the gun which Anderson had was a real gun; later it turned out to be a starter pistol used in sports events; he did not know whether Anderson was going to shoot him, so he "came up with" the gun he had; Anderson threw something at him and "hollered": "Bill, he's got a gun"; Anderson then grabbed his hand and the gun discharged; Anderson fell against the wall, and Locklear jumped toward him; he told Locklear to "Hold it," and the gun discharged again; Locklear fell back on the bed and then ran out the door; and he did not pull the trigger—the gun just discharged. (The ballistic expert testi-

fied that the gun would have to be cocked before it could be fired.) Defendant testified further that he did not know whether his gun had been fired before he shot Anderson; after the shooting, he went to the bedroom closet which was locked; he had some idea that Anderson kept his money there; he broke into the closet, and took Anderson's wallet, which contained some credit cards and checks; he did not look into the wallet until he was in the car on his way to San Francisco; there was no money in the wallet; he did not intend to rob Anderson; he only intended to get Anderson to pay him what he was owed, and to leave peaceably; it was happenstance that he met Alexander at the coffee shop, and they just happened to stop at Anderson's house on the way to San Francisco; he did not put any of Anderson's clothes in the Buick; he did not have any idea how his clothes got into the Buick; he thought Anderson only had a minor wound; Anderson was not dead when he left the house; he did not call the police or an ambulance; he picked up Anderson's gun before he left the house and threw it away; and he discussed the trip to San Francisco with Alexander before they went to Anderson's house. (At previous trial he testified that they did not decide to go to San Francisco until after the shooting.) He testified further that he did not look for Locklear in the street after the shooting; and Alexander moved the Buick from the front of the house and backed it up so that he could get into it.

(At the penalty phase of the trial, defendant testified that he served five years in prison for beating a woman with a wrench.)

. As above stated, appellant contends that the evidence does not support the verdict. He argues that there was ''no premeditation or deliberation''—that defendant ''used the gun for the purpose of scaring the victim into paying the money for his past services''; and that this court should either reverse the judgment or modify it by reducing the degree of the crime.

As above indicated, defendant's asserted defense was predicated upon a theory of lack of intent to steal in that he sought in good faith to obtain money which Anderson allegedly owed him. Upon the former appeal, the judgment of conviction was reversed on the basis that the trial judge erred in overruling defendant's objection to certain argument of the prosecuting attorney. The prosecutor had argued to the jury, to the effect, that a person who takes money from another person at gunpoint, merely because he believes that

the other person owes him money, has committed robbery. Defendant's counsel, in objecting to the argument, said in effect that intent to steal was a necessary element of robbery. The objection was overruled. On appeal therein (*People* v. *Butler, supra,* 65 Cal.2d 569), it was said (p. 574) that the "trial court's approval of the prosecutor's argument" precluded a finding that there was no intent to steal. It was also said therein (p. 573) that "a bona fide belief, even though mistakenly held, that one has a right or claim to property negates felonious intent." Upon the retrial (involved in the present appeal) the following instruction, requested by defendant, was given: "One who seeks to obtain from another person money which, in good faith, he believes is owed to him by the other person does not commit robbery or attempted robbery even if he takes or attempts to take the money at the point of a gun." That instruction, given at defendant's request, was of course favorable to the defendant; but it should not have been given—it was too broad an application of the ruling on the former appeal, was contradictory within itself, and confusing by implying that robbery might be committed in good faith.

At the request of the People, the jury was instructed that murder which is committed in the perpetration or attempted perpetration of robbery is murder of the first degree. Another instruction, given at the request of the People, was that a necessary element of the crime of robbery and attempted robbery is the existence in the mind of the perpetrator of the specific intent to steal. The jury found defendant guilty of murder of the first degree, and thereby impliedly found that defendant took the property with intent to steal it. The evidence was sufficient to support those findings.

The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.