[Crim. Nos. 26693, 26782. Second Dist., Div. Five. Nov. 10, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
LAVELLE JAMES KEITH, Defendant and Appellant.

948

## COUNSEL

Henry P. Crabtree, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Howard J. Schwab, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

KAUS, P. J.—Defendant Lavelle James Keith appeals from a judgment of conviction in case No. A-306784 (2d Crim. 26693), and from an order revoking probation in case No. A-282277 (2d Crim. 26782). He was sentenced to prison in both cases.

Defendant and a codefendant Smith were charged with murder (count 1), robbery (count 2), and assault with a deadly weapon (count 3). Defendant was charged with having used a firearm within the meaning of Penal Code section 12022.5 in connection with each count.

After the court denied defendant's motions to suppress evidence, to exclude photographic evidence of him, and to quash the jury venire, a jury trial was held. The jury, which acquitted Smith, found defendant guilty as charged of counts 1 and 3, and guilty of attempted robbery, a lesser included offense, and further found the use allegation to be true. Defendant was sentenced to prison. Imposition of sentence on counts 2 and 3 was stayed under Penal Code section 669, the stay to become permanent upon denial of his appeal as to count 1. The judgment recited the firearm use finding.

FACTS

The incident occurred at the Tai Ping Restaurant in Los Angeles on April 8, 1974, at about 11 p.m. The murder victim was Joseph Tong, the attempted robbery victim was Beverly Tong, and the assault victim was Stephen Tong.

Frederick Brown, a liquor store owner who knew defendant as a customer, observed defendant and another man in the Tai Ping Restaurant at about 11 p.m. They walked past the table at which Brown and his wife were seated. A few minutes later, Brown heard some noise and observed defendant and two restaurant workers struggling near the entrance door. Defendant was wearing a jacket and a cap.

The victim of the attempted robbery, Beverly Tong, was working at the Tai Ping Restaurant as a hostess and a cashier. Joseph Tong, her uncle, and Stephen Tong, her father, were standing near her. At about 11 p.m., three black males wearing leather jackets and dark pants entered the restaurant and walked toward the restroom area. Then defendant came over to the register, took out a gun, and asked Beverly to take the money out of the cash register. At that point, defendant was standing between Joseph and Stephen. Beverly started taking the money out of the register. Defendant reached for it and a struggle followed, in which Stephen tried to get the weapon away from defendant. Joseph tried to help Stephen. The three men, still struggling, went through the door. Beverly heard one shot, followed by eight shots.

Meantime, defendant kept dragging Stephen and Joseph back toward the door. A shot was fired; at that time Stephen's hand was still on defendant's gun and the three of them were wrestling. After they got onto the patio, Stephen saw two men come out and point guns at their heads. They said "words to the effect, 'Hold it,' " and Stephen yelled to his brother, "Back up, Joe." Stephen and Joseph let defendant go and the three men, all armed, backed up a little bit and started shooting from a distance of about 10 feet. Stephen stood there frozen. After firing a volley of shots, the three men started running toward the parking area. Stephen heard about 10 or 12 shots. He saw the men jump over a wall. He then went back to the restaurant. Stephen did not see his brother. Joseph was found lying by a stairway, shot in the back. He died from the wound.

The restaurant manager saw two persons by the wall and one standing on the sidewalk, shooting. He shot at the two persons, but did not hit them.

Defendant was arrested at his home on April 11 at about 2 a.m. He was allowed to put on trousers. His grandmother, who also lived in the house, asked the officer to allow defendant to take his shoes, hat and jacket. The officer observed a hat and cap and took both of them, and also took the shoes.

Beverly Tong was shown separate sets of photographs on two occasions and identified defendant from each set. Stephen was also shown two sets of photographs and identified defendant on both occasions. A third set of photographs, which did not contain a photograph of defendant, was shown to the Tongs. Neither of them was able to make an identification.

Facts will be added in the discussion.

## DISCUSSION

Defendant contends: (1) The motions to suppress the evidence taken when he was arrested should have been granted; (2) the photographic identification procedure was unfair; (3) the jury venire should have been quashed; (4) he was improperly convicted of murder under the felony-murder rule; and (5) the judgment, in any event, is erroneous and must be modified.

(1) *Motion to suppress.* Defendant contends the trial court erred in not granting his motion to suppress because the police officer's testimony that defendant's grandmother requested the police to take "the precise articles that were eventually used as evidence at trial," is inherently improbable. The contention is without merit; at best, the conflict between the officer's version and the grandmother's version involved a question of fact resolved by the trial court against defendant. (*People* v. *Lawler,* 9 Cal.3d 156, 160 [107 Cal.Rptr. 13, 507 P.2d 621].)

(2) *Photographic identification.* Defendant contends that the photographic identification procedure was unfair because, first, the liquor store owner, Frederick Brown, had signed his name on the reverse of the photograph of defendant and the other witnesses could see that signature, and, second, Stephen Tong heard Beverly Tong identify defendant's photograph as "number 4."

Neither contention is well supported by the record. Although the officer testified that the Tongs were in hearing distance of each other, Stephen testified that Beverly did not state a number "or anything of that nature to the person she picked out." And, although the Tongs had been informed that the officers had a man in custody, "that witness Brown can identify," they were not told which photograph he had identified, were instructed not to look at the back of the photographs, and, contrary to trial counsel's assertion, Brown's signature on the back of defendant's photograph was not necessarily observed by the Tongs as they flipped through the stapled stack.[1]

Moreover, assuming arguendo that the first photographic display tended to be unfair, both of the Tongs identified defendant's photograph on a second occasion, and, then, as a control device, neither of the Tongs identified defendant from a third set of photographs which did not contain his photograph.

Defendant also complains that on one of the occasions that the Tongs went to the police station to view photographs, they observed a cap or hat on a table. The thrust of his complaint is unclear. Defendant was, of course, not present at the photographic show-up with or without a cap or hat, and neither of the Tongs was requested to identify the hat, although Stephen did immediately recognize the hat without it being pointed out to him. Beverly Tong made no comment at all concerning the cap.

In brief, the photographic identification procedure was not unfair and the courtroom identification of defendant by Beverly and Stephen Tong was properly admitted.

■ (3) *Motion to quash jury venire.* Defendant contends that he was denied his right to be tried by a fair and impartial jury because the jury venire was chosen from a list of registered voters which, he asserts, resulted in the exclusion of a disproportionate number of blacks from the jury panel.[2] The contention is without merit. The use of a list of registered voters is constitutionally "unassailable." (*People* v. *Powell,* 40 Cal.App.3d 107, 126 [115 Cal.Rptr. 109], and cases collected.)

■ (4) *Felony-murder theory.* The only basis for defendant's conviction of first degree murder submitted to the jury was the People's theory that

[1]We have augmented the record with the photographs.

[2]Defendant relies on a superior court case (People v. Taylor (L.A.S.C. No. A-277425)), the order in which was vacated in McCourtney v. Superior Court (2d Civ. No. 45230).

defendant or one of his accomplices killed the victim in the course of a robbery or attempted robbery. As noted, the jury convicted defendant only of attempted robbery and the People's case was that the victim was killed during the attempted flight of the frustrated robbers. Defendant argues that the rule recently recognized and restated in *People* v. *Salas*, 7 Cal.3d 812, 821-824 [103 Cal.Rptr. 431, 500 P.2d 7, 58 A.L.R.3d 832], that a robbery is not complete while the robber only has scrambling possession of the loot and has not reached a place of temporary safety, does not apply to unsuccessful robberies that do not result in any loot and, hence, no possession whatever.

While no case has been found applying the *Salas* doctrine to the precise facts of this case, we have no doubt that it does. Robbery "is but larceny aggravated by the use of force or fear to accomplish the taking of property from the person or presence of the possessor . . ." (*People* v. *Butler*, 65 Cal.2d 569, 572-573 [55 Cal.Rptr. 511, 421 P.2d 703].) It requires no extended discussion to show that the element in a robbery which justifies the application of strict criminal liability concept incorporated in the felony-murder doctrine is the use of force or fear rather than the taking of property. (See *People* v. *Satchell*, 6 Cal.3d 28, 33-34 [98 Cal.Rptr. 33, 489 P.2d 1361, 50 A.L.R.3d 383], and cases cited.)

Alternatively, defendant argues that the jury was not properly instructed. He points to the fact that while it was told that "the crime of robbery is not complete until the perpetrator has reached a place of temporary safety," the court failed to instruct the jury just when an attempted robbery is complete, leaving that matter to the jury's speculation. Assuming this theoretical gap in the instructions to be error, on the facts of this case the error is clearly nonprejudicial. It is inconceivable that the jury would have thought that the robbers had reached a place of safety at the time of the homicide.

Defendant's final contention concerning the felony-murder doctrine —that the restaurant manager might have killed Joseph Tong—reflects either a dispute with the facts as found by the jury or a misreading of the felony-murder instructions which required the jury to find that the victim was killed by one of the perpetrators of the crime.

(5) *Modification of judgment.* Relying on *People* v. *Johnson*, 38 Cal.App.3d 1, 11-12 [112 Cal.Rptr. 834], defendant contends that the recitation of multiple findings of the use of a firearm will result in the imposition of three consecutive sentences under Penal Code section

12022.5, contrary to the holding of that case. On the contrary, the judgment in this case closely tracks the modification drafted by the appellate court in *Johnson.* To avoid any possible misunderstanding, we find that the judgment imposes but a single sentence under Penal Code section 12022.5.

Defendant has also appealed from an order revoking probation in case No. A282277 and sentencing him to prison, imposition of which sentence was stayed under Penal Code section 669. Since the only contention raised in connection with the probation revocation is that the order should be set aside if the judgment in 2d Crim. 26693 is reversed, the judgment in 2d Crim. 26782 is affirmed.

### CONCLUSION

The judgments are affirmed.

Stephens, J., and Ashby, J., concurred.