Elkin Jesus GOMEZ, Petitioner–Appellee,

v.

Rosie B. GARCIA, Warden,
Respondent–Appellant.

No. 95–55512.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Feb. 5, 1996.

Decided April 5, 1996.

As Amended on Denial of Rehearing
June 28, 1996.

George Williamson, Carl Wendelin Pollock, Marc E. Turchin, and Simon Silva, Deputy Attorney Generals, Los Angeles, California, for respondent-appellant.

Paula C. Greenspan, Merilee Marshall & Associates, Los Angeles, California, for petitioner-appellee.

Before: BEEZER, BRUNETTI, and JOHN T. NOONAN, Jr., Circuit Judges.

## OPINION

NOONAN, Circuit Judge:

Rosie B. Garcia, Warden, appeals the qualified grant of habeas corpus by the district court to Elkin Jesus Gomez, a prisoner of the state of California. The district court adopted the report of a magistrate judge that Gomez had been denied the right of counsel on appeal because his counsel represented a codefendant whose interest was in conflict with that of Gomez. The district court accordingly discharged Gomez "from all adverse consequences" of his conviction of kidnapping for the purpose of extortion unless he was permitted to take a second direct appeal of his conviction. Holding that no conflict existed for Gomez's counsel, we reverse the judgment of the district court.

## FACTS

Gomez and Luis Cardona were tried for the crime of kidnapping for extortion in violation of California Penal Code § 209(a). Both were found guilty. Evidence at their trial showed that on December 6, 1987 Claudia Espinoza, a cocaine dealer, hired Gomez and Cardona to make "collections" on behalf of Claudia and her husband Tito Espinoza. The first person targeted for collection was Billy Mikus, a drug dealer who had been dealing with the Espinozas during 1986 and who in 1987 was cooperating with the FBI in investigating the Espinozas' cocaine distribution.

On December 10, 1987 Gomez and Cardona met with two other associates of the Espinozas, Jose Lujan and Raoul Gallegos, and decided that, in carrying out the collection from Mikus, Lujan, Gallegos and Gomez would carry weapons. Following a plan they had agreed upon with Claudia Espinoza they waited for Claudia to bring Mikus to a parking lot that evening. Lujan pointed a gun at Mikus and moved into the passenger seat of his car. Gomez sat in the back seat where he was eventually joined by Cardona as Mikus drove the car at their command. Mikus did not speak Spanish and Gomez acted as the translator, conveying threats to Mikus' life if he did not pay the Espinozas $82,000. According to Jose Lujan, who was present during the kidnapping, Gomez told Mikus that all they "wanted was the drugs or the money." Mikus was also told by Gomez, "We are not robbing you" and "We are not extorting you," but all that was wanted was what he owed.

Mikus eventually escaped from the car and the FBI intervened to rescue him and to capture Lujan. Cardona and Gomez were later apprehended.

At the trial Cardona and Gomez were represented by different counsel. Both counsel asked for the dismissal of the kidnapping for extortion count on the ground that the defendants had a claim-of-right defense, i.e., that they were attempting to collect a debt that was owed and that therefore they had no specific intent to extort. This motion was denied. The defendants' request was also denied that the jury be instructed that kid-napping for the purpose of extortion required specific intent to extort and that the defendant did not have such specific intent because Mikus in fact owed $82,000 to Tito Espinoza. At the request of the prosecution the court charged the jury: "A person cannot have a good faith belief that he has a right to property when that property is derived from a notoriously illegal transaction. Sale of cocaine, and obtaining proceeds from such sale is a notoriously illegal transaction."

On the appeal of the case Cardona and Gomez were both represented by Earl L. Hansen. Hansen is a graduate of the University of Southern California Law School. On graduation he worked as a law clerk for the presiding judge of the appellate department of the Los Angeles Superior Court. From 1961 to 1963 he was a prosecutor for the City of Los Angeles, prosecuting hundreds of criminal trials. From 1963 to 1994 he was engaged in private practice and served as counsel in over 150 felony jury trials, 200 court trials and many hundreds of cases resolved without trial. He was certified as a criminal law specialist in 1973 and has represented defendants in criminal trials in both state and federal courts throughout California. He was contacted by Cardona and Gomez to pursue their appeal. He did not perceive any conflict and agreed to file an appellate brief for both defendants on what he considered "the only viable issue on appeal."

That single issue presented on appeal was the denial of the defendants' claim-of-right instruction. Hansen's brief for Gomez cited *People v. Butler*, 65 Cal.2d 569, 55 Cal.Rptr. 511, 421 P.2d 703 (1967), which held that the honest belief that one was entitled to money from the victim is a defense to the charge of robbery. Hansen advanced the same argument in his brief on behalf of Cardona.

In response to this argument the state replied: "The claim-of-right theory, however, does not apply to claims based on notoriously illegal activities. (*People v. Hendricks* (1988) 44 Cal.3d 635, 642, 244 Cal.Rptr. 181, 749 P.2d 836; *People v. Gates* (1987) 43 Cal.3d 1168, 1181–1182, 240 Cal.Rptr. 666, 743 P.2d 301.) ... Appellants' ostensible right to the

victim's property was clearly based on illegal narcotics transactions." The state added that there was no evidence that the appellants acted with a belief that they had any lawful claim to the money, and further that there was no evidence that they had any personal claim to the property they were seeking from Mikus.

The Court of Appeals for the Second Appellate District denied the appeals in an opinion addressed to both Gomez and Cardona's convictions. The court gave its reason in the single sentence: "The claim of right theory does not apply to claims, such as here, based on notoriously illegal transactions." Subsequently Gomez, with new counsel, filed a petition in the Court of Appeals for the Second Appellate District seeking "to recall remittitur or, in the alternative, petition for habeas corpus." This petition set out for the first time a claim that Gomez's appellate counsel had suffered from a conflict of interest. Gomez's petition was denied and he appealed to the Supreme Court of California. With one dissent that court also denied his petition for review.

### FEDERAL PROCEEDINGS

Gomez then brought this petition for habeas corpus in the federal district court. The magistrate judge ruled that "the claim of right defense does *not* apply to the crime of kidnapping for extortion *under any circumstances*. See *People v. Beggs*, 178 Cal. 79, 84, 172 P. 152, 154 (1918)" (italics in original). Nonetheless the magistrate judge ruled that the representation by Hansen of Cardona and Gomez "likely" affected the quality of Hansen's advocacy for Gomez. The magistrate judge believed that "[t]he logical, forceful reply" for Gomez to the state's brief on appeal was that Gomez, unlike Cardona, "was ignorant of the illegal nature of the transaction giving rise to the debt. This assertion would have improved Petitioner's sole argument on appeal." At the same time the magistrate judge recognized that if Gomez was given a second shot at appeal it would be futile because California law did not recognize the defense he was now urging. But the magistrate judge ruled that once an actual conflict of interest had been established,

there was no need to demonstrate prejudice from the conflict. *Cuyler v. Sullivan*, 446 U.S. 335, 349, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). Accordingly, the magistrate judge recommended the qualified grant of habeas corpus already described. His recommendation was adopted by the district court.

The warden appeals.

### ANALYSIS

The law of California was established in 1918 that belief that the victim owes a debt is not a defense to the crime of extortion. "It is the means employed which the law denounces, and, though the purpose may be to collect a just indebtedness arising from and created by the criminal act for which the threat is to prosecute the wrongdoer, it is nevertheless within the statutory inhibition." *People v. Beggs*, 178 Cal. 79, 83, 172 P. 152 (1918). *Beggs* was cited in dictum in 1929 in *People v. Whipple*, 100 Cal.App. 261, 263, 279 P. 1008 (1929). It was applied in 1945 in *Lindenbaum v. State Bar*, 26 Cal.2d 565, 573, 160 P.2d 9, 14 (1945) (lawyer guilty of extortion when he sought to obtain money through his threats although the money "may have been justly due him.") *Beggs* was most recently applied in *People v. Serrano*, 11 Cal.App.4th 1672, 15 Cal.Rptr.2d 305, 308 (1992). At no point in the law of California since 1918 has the slightest doubt has been cast on the holding in *Beggs* that made Gomez's alleged defense both irrelevant and futile.

Another line of California cases focuses on robbery and holds that the good faith belief that one is owed the money is a defense to a charge of robbery because "a specific intent to steal, i.e., an intent to deprive an owner permanently of his property, is an essential element of robbery." *People v. Butler* 65 Cal.2d 569, 573, 55 Cal.Rptr. 511, 514, 421 P.2d 703, 706 (1967). Robbery and extortion are different crimes "distinguished by the fact that in extortion the property is taken with the victim's consent whereas in robbery it is taken against his will." *In re Stanley E.*, 81 Cal.App.3d 415, 420, 146 Cal.Rptr. 232 (1978) (citing *People v. Beggs*, 178 Cal. 79, 172 P. 152 in support of this distinction).

The statute under which Gomez was prosecuted itself draws a distinction between kidnapping "to commit robbery," Cal.Penal Code § 209(b) and kidnapping "to commit extortion," *Id.* § 209(a), the crime with which Gomez was charged. Any well-trained California lawyer would have seen at once that a defense germane to a charge of robbery would have no bearing where kidnapping for extortion was the crime charged.

It is perfectly true that the State of California neither at trial nor on appeal cited *Beggs* and its progeny, nor did the trial or the appellate court. That apparent oversight does not change the objective fact that Gomez had no basis in California law for his claim-of-right theory as a defense to extortion. The prosecutor did not go further than he needed to when it was clear that: (1) there was no evidence in the record that either Gomez or Cardona had the belief that they were collecting a lawful debt; (2) there was no evidence in the record that they believed they were collecting money owed them; (3) there was evidence in the record that they were two kidnappers hired to carry out a brutal kidnapping with the intent of shaking down the victim; and (4) Gomez had actually translated to Mikus the demand of Cardona that Mikus either give them "the drugs or the money." The fancied difference of degrees of knowledge between Cardona and Gomez did not exist; the evidence at trial shows them both at work in collecting on a drug deal.

■ The law is crystal clear that if there is an actual conflict of interest counsel is disqualified. *Cuyler v. Sullivan,* 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980); *U.S. v. Miskinis,* 966 F.2d 1263 (9th Cir. 1992). To succeed on the constitutional claim, the petitioner for habeas corpus must show that a conflict exists. Here, none did.

**REVERSED.**