NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

|  |  |
|---|---|
| THE PEOPLE,<br><br>       Plaintiff and Respondent,<br><br>v.<br><br>ROBERT MCDANIELS,<br><br>       Defendant and Appellant. | C072707<br><br>(Super. Ct. No. 11F05313) |

A jury found defendant Robert McDaniels guilty of possessing marijuana in a penal institution.  (Pen. Code, § 4573.6, subd. (a).)[1]  In a bifurcated proceeding, the jury found true an allegation defendant "was convicted of the crime of first degree murder in violation of . . . section 187 on April 11, 2001."  In the amended information, this

---

[1]     Further statutory references are to the Penal Code unless otherwise indicated.

1

conviction was alleged as the basis for a prior prison term enhancement. (§ 667.5, subd. (b).)

Defendant was sentenced to prison for three years consecutive to the term he was then serving. He moved to strike the prior prison term allegation because he had not "completed" the "period of prison incarceration imposed for" the murder and, in fact, was in custody for it at the time of the present offense. (§ 667.5, subd. (g).) The trial court declined to strike the allegation but also declined to impose any additional penalty for it.

On appeal, defendant contends (1) the trial court erred when it limited his right to cross-examine and impeach Officer Hampton, a percipient witness; and (2) the prior prison term allegation must be stricken; the People concede this latter point. We modify the judgment.

## FACTS[2]

On May 19, 2011, defendant was an inmate at Folsom State Prison serving a sentence for first degree murder. At 1:30 a.m., correctional officers Carrillo and Guzman approached the cell containing defendant and another inmate. Correctional Officer Hampton provided light from her flashlight as the other officers entered the cell. As the duo entered, defendant rose up from his lying position on the upper bunk bed, reached to a shelf at the rear of the cell, grabbed an object, and stuck it in his mouth. Officer Guzman ordered him to spit out whatever he had put in his mouth. Defendant opened his mouth and Officer Guzman noted that it was empty.

Defendant was handcuffed, escorted to an administrative segregation unit, and placed on contraband surveillance watch -- an around the clock observation that continues until the ingested object passes from the body.

---

[2] Our statement of facts taken from the prosecution's case at trial is limited to the marijuana offense and does not include possible prison rule violations by defendant.

2

More than four days later, defendant informed Correctional Officer Lofton that he needed to make a bowel movement. After defendant defecated into a plastic bag, Officer Lofton sorted through the feces and found a small balloon. Inside the balloon she found some plastic wrap that contained a green leafy substance. Officer Lofton weighed the balloon and separately weighed its contents.

Officer Hampton transported the evidence to the Sacramento County Crime Laboratory for examination. She also transported the evidence to a forensic laboratory for testing by the defense. Finally, she transported the evidence to court for presentation at trial.

Tests performed on the substance at the Sacramento County Crime Laboratory confirmed that it was marijuana with a net weight of 0.11 grams. The defense testing at another forensic laboratory, in West Sacramento, was apparently inconclusive. Even so, defendant raises no issue of the matter here.

DISCUSSION

I

*Limitation of Cross-Examination*

Defendant contends the trial court erred when it limited his right to cross-examine and impeach Officer Hampton, whom he terms a "percipient witness." He claims further cross-examination "could have revealed other defects in her credibility, knowledge, and recollection, perhaps as it relates to her maintenance of the evidence's chain of custody." We disagree.

A. *Background*

Officer Hampton was the prosecution's first witness at trial. Defendant sought to impeach her based on a time discrepancy in reports that appeared to put Officer Hampton in two places within the prison cell block at or near the same time. In his cross-examination, defense counsel asked Officer Hampton if she remembered the date of the search. Examining her report, she stated it was "May 19th, 2011, at approximately 1:30

3

a.m., in the morning." After establishing that defendant was in cell C-507 on the fifth tier, defense counsel asked, "And you stayed there from approximately 1:30 to approximately 2:15; is that correct?" Officer Hampton answered, "I believe I was there even longer than that. 2:15 is the time that I discovered the cell phone and charger in cell number 7."

Defense counsel later sought to introduce a document not previously disclosed to the prosecution. Cross-examination was halted and counsels met with the trial court in chambers. Following the chambers session and out of the jurors' presence, the trial court summarized the chambers session on the record.

The trial court noted that Officer Hampton was not involved in the search that yielded the marijuana. Her only involvement was shining a flashlight to assist the searching officers. Later, Officer Hampton entered the cell and discovered a cellular telephone, another item of contraband. In the court's view, "the finding of the cell phone, the fact of the cell phone, any administrative remedies that occurred as a result of that piece of contraband, are completely irrelevant to the issues in this case." The court was "surprised that there was not a relevance objection" to the cell phone evidence, which the court "would have sustained."

The trial court explained that the document or "piece of paper in question was about a paragraph long, appears to be a report, perhaps, generated by [Officer Hampton], regarding a cell search of another cell, of two inmates completely unrelated to this case, that the officer indicated began approximately at 2:00 o'clock." Defense counsel "indicated that he wished to cross-examine [Officer Hampton] regarding the possible discrepancy, as he described it, between her claim that she was involved in a cell search up on the floor involving this defendant versus a -- being involved in a cell search on another floor, perhaps, at the same time."

4

The trial court opined that there was "no necessary discrepancy between the times indicated" because "she did not say, nor did she claim under oath, that she stood by, stationary, in a single position or within a few feet within a particular time period."

The trial court next established that the timing of Officer Hampton's activities (other than holding the flashlight) was not relevant to defendant's possession of marijuana. The court noted there was no dispute that Officers Carrillo and Guzman observed defendant swallow a balloon, a balloon emerged from defendant's body, correctional officers collected the balloon, and the substance in the balloon was weighed at the county crime laboratory as well as the West Sacramento forensic laboratory. The defense was not claiming that Officer Hampton, who had transported the material, was somehow responsible for the different weights measured by the two laboratories.

After establishing these facts, the trial court ruled as follows: (1) the defense's failure to provide discovery of the report "until five seconds before" questioning Officer Hampton was "inappropriate"; (2) questioning Officer Hampton about her search of another cell "at or near the same time that this cell search occurred" is "not relevant"; and (3) even if the questioning was relevant, its probative value would be "far outweighed" by "the possibility of confusion or other things"; thus, the report would be excluded under Evidence Code section 352.

Returning to the question of relevance, the trial court explained that the evidence "simply has no bearing, none, on the issue in this case, which is, 'Did the defendant possess contraband?' Apparently, it is not disputed that he swallowed a balloon, that he excreted a balloon, that a balloon was collected from his body. The dispute is whether or not the contents of that balloon contained sufficient or appropriate controlled substance to have constituted a crime." Thus, the defense "efforts to raise side issues of this variety are not appropriate."

After defense counsel responded to the trial court's concern about the discovery violation, the trial court reiterated that questioning Officer Hampton about the timing of

5

another cell search is "not relevant to any issues at issue in this case." The court reiterated that the defense was not making an argument that Officer Hampton somehow tampered with the evidence during the various transportations. Absent such an argument, the timing of the cell searches "does not speak to [Officer Hampton's] credibility, and certainly does not speak to any relevant issues in this case."

Defense counsel countered that he needed to "attack and give the jury every reason [he] possibly [could] to disbelieve what has been presented to them." Counsel understood that the trial court may rule, " 'Hey, this is not relevant,' " and he respected that. The court responded, "it may be a different issue if you are talking about an officer that actually makes an observation of something that involves the criminal act in this case. This officer had no such observation. This officer, basically, took the marijuana from a locker, to the crime lab and the [West Sacramento forensics laboratory used by the defense]. That's all she did. And anything else other than holding a flashlight, she is not really involved in this case."

B. *Analysis*

"Cross-examination may be employed to elicit any information that may tend to overcome, qualify, or explain the testimony given by a witness on direct examination [citation] as well as to test his accuracy, recollection, knowledge or credibility. [Citation.]" (*People v. Butler* (1967) 65 Cal.2d 569, 575, overruled on other grounds in *People v. Demetrulias* (2006) 39 Cal.4th 1, 22.) But " '[t]he control of cross-examination is within the discretion of the trial court, permitting it to curtail cross-examination relating to matters already covered or irrelevant.' " (*People v. Panah* (2005) 35 Cal 4th 395, 483, quoting *People v. Kronemyer* (1987) 189 Cal.App.3d 314, 352; see *People v. Watson* (1956) 46 Cal.2d 818, 827; *People v. Whitehead* (1952) 113 Cal.App.2d 43, 48.)

Defendant sought to impeach Officer Hampton with the purported discrepancy between her trial testimony that she stayed at cell C-507 from approximately 1:30 to

6

approximately 2:15 or "even longer than that," and her assertion in the document that her search of an unrelated cell "began approximately at 2:00 o'clock."

Defendant claims the trial court abused its discretion by "determining the value and weight" of the claimed discrepancy even though that is "solely the dominion of the jury." (Evid. Code, § 312, subd. (a).) We assume for present purposes that jurors reasonably could view the approximately 15-minute discrepancy as *some* reason to discount Officer Hampton's trial testimony; we do not resolve that issue ourselves. But this begs the question of *which* testimony would be discounted.

Defendant speculates that "trial counsel's further examination of Officer Hampton could have revealed other defects in her credibility, knowledge, and recollection, *perhaps as it relates to her maintenance of the evidence's chain of custody*." (Italics added.) But at the hearing defendant eschewed any issue of "tampering," including any claim that Officer Hampton was responsible for the different weights measured by the laboratories. Thus, although defendant sought to admit the *time* discrepancy evidence, he never claimed it could be relevant to the *weight* discrepancy or any other chain of custody issue. The trial court had no duty to reach an opposite conclusion.

The trial court properly concluded that, aside from maintaining the chain of custody, Officer Hampton's role in this case was limited to "holding a flashlight" for her fellow officers. Defendant does not claim the time discrepancy somehow impeaches Officer Hampton's testimony on that issue, and no possible impeachment value appears. It follows that the trial court properly excluded the time discrepancy evidence as irrelevant to the present case. There was no abuse of discretion. (*People v. Panah, supra,* 35 Cal 4th at pp. 483-484.)

This leaves defendant's claim that the trial court's rulings violated his confrontation rights. The claim has no merit.

" ' "[T]rial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns

7

about, among other things, harassment, prejudice, confusion of the issues, the witness'

safety, or interrogation that is repetitive or only marginally relevant." [Citations.]

Exclusion of impeaching evidence on collateral matters which has only slight probative

value on the issue of veracity does not infringe on the defendant's right of confrontation.'

[Citations.] Ordinarily, proper application of the statutory rules of evidence does not

impermissibly infringe upon a defendant's due process rights. [Citations.]" (*People v.

Ardoin* (2011) 196 Cal.App.4th 102, 119.) Having determined that the trial court

complied with relevant statutory rules of evidence, we conclude it did not violate

defendant's confrontation rights.

II

*Prior Prison Term Allegation*

Defendant contends, and the People agree, the prior prison term allegation must be

stricken because defendant's prison term has not yet concluded.

A. *Background*

The amended information alleged that on April 11, 2001, defendant had been

convicted in the Alameda County Superior Court of first degree murder and "that a term

*was served as described in Penal Code Section 667.5* for said offense, and that he did not

remain free of prison custody for, and did commit an offense resulting in a felony

conviction during, a period of five years *subsequent to the conclusion* of said term."

(Italics added.) At the bifurcated jury trial, the prosecution presented testimony from a

deputy district attorney that defendant "was sent to State Prison following the [murder]

conviction to serve a 25 years to life term, and he's been in prison ever since."

The prosecutor later filed a Statement in Aggravation that stated in relevant part

the prior prison term allegation was unfounded and should not have been charged in the

amended information. The prosecutor asked the trial court to grant a new trial on the

allegation and then dismiss it pursuant to section 1385.

8

At sentencing, defendant moved to strike the allegation because the underlying prison term had not been completed. Notwithstanding his prior admission, the prosecutor objected to dismissal of the allegation on the ground that, per his understanding of section 1170, defendant might serve his sentence for the present marijuana offense in county jail rather than prison if the allegation were stricken. The trial court refused to strike the allegation but declined to impose the one year penalty for the enhancement.

B. *Analysis*

Section 667.5, subdivision (g) states in relevant part: "A prior separate prison term for the purposes of this section shall mean a continuous completed period of prison incarceration imposed for the particular offense. . . ." "Imposition of a sentence enhancement under Penal Code section 667.5 requires proof that the defendant: (1) was previously convicted of a felony; (2) was imprisoned as a result of that conviction; (3) completed that term of imprisonment; and (4) did not remain free for five years of both prison custody and the commission of a new offense resulting in a felony conviction. [Citation.]" (*People v. Tenner* (1993) 6 Cal.4th 559, 563.)

In this case, defendant did not serve a "prior separate prison term" as defined in section 667.5, and his motion to strike the prior prison term allegation should have been granted.

DISPOSITION

The judgment is modified by striking the prior prison term allegation. As so modified, the judgment is affirmed. The trial court is directed to prepare an amended

9

abstract of judgment and to forward a certified copy to the Department of Corrections and Rehabilitation.

        NICHOLSON    , J.

We concur:

       RAYE          , P. J.

       HOCH         , J.

10