[No. B082452. Second Dist., Div. Seven. May 24, 1995.]

THE PEOPLE, Plaintiff and Respondent, v.
MAURICE DESI FONT, Defendant and Appellant.

**COUNSEL**

Dennis L. Cava, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, Carol Wendelin Pollack, Assistant Attorney General, William T. Harter and Joseph P. Lee, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**WOODS (Fred), J.**—Appellant Maurice Desi Font was tried with codefendants Glover and Hines for second degree robbery (Pen. Code,[1] § 211). A jury convicted appellant and found true a firearm allegation (§ 12022, subd. (a)(1)) but was unable to reach verdicts regarding codefendants Glover and Hines.[2] Appellant contends the prosecutor committed *Griffin* (*Griffin* v. *California* (1965) 380 U.S. 609 [14 L.Ed.2d 106, 85 S.Ct. 1229]) error and the firearm finding cannot be sustained because no such finding was made regarding the codefendants.

We reject appellant's contentions and affirm the judgment.

---

[1]Statutory references, unless otherwise noted, are to the Penal Code.
[2]The jury hung nine to three for guilty as to Glover and Hines.

## FACTUAL BACKGROUND

There being no insufficiency of evidence claim, the facts may be stated simply. Our perspective favors the judgment. (*People* v. *Barnes* (1986) 42 Cal.3d 284, 303-304 [228 Cal.Rptr. 228, 721 P.2d 110].)

This "follow-home" robbery began about 2:30 a.m., June 7, 1993, when the victim, Rubik Akbire, left the Commerce Casino Card Club in the City of Commerce. He was followed by appellant, Glover, and Hines with Hines driving his dark, older, four-door Lincoln Continental with a leather top. Glover was the front passenger and appellant the right rear passenger.

Mr. Akbire drove to his residence in Glendale, a 25-minute drive, and parked by the curb in front of his apartment building. As he did so, Hines blocked Mr. Akbire's car by pulling alongside and to the front of it. Glover "jumped out," put a gun to Mr. Akbire's head, asked for his money, said "What are [*sic*] you doing in the casino? You making money," and kept calling Mr. Akbire a "mother fucker." Mr. Akbire gave his wallet to Glover.

When Mr. Akbire was standing between the two cars, the rear passenger (whom Mr. Akbire did not see clearly and could not identify) exited, grabbed Mr. Akbire's back, pushed him to the ground, and told him to close his eyes.

Glover searched Mr. Akbire's car and tossed into the street his garage door remote control, lighter, car keys, service book, and other papers.

Glover then ordered Mr. Akbire to enter his car and lie down.

The robbers then drove off.

Mr. Akbire immediately went to his apartment, called the police, and reported the robbery. He described the robbers' car, said there were three robbers, all male Blacks in their twenties, and one had a gun.

Glendale Police Sergeant Lowrey heard the radio transmission which described the "just occurred" robbery of Mr. Akbire and drove to the Harvey on-ramp of the 134 freeway. He saw three male Blacks in a car that matched the description of the robbers' car. Sergeant Lowrey followed the car, requested backup assistance, and stopped the Hines car. Hines was the driver, Glover the front passenger, and appellant the right rear passenger.

Sergeant Lowrey had Hines exit first, without incident. But when he ordered Glover to exit, appellant, still seated in back, behind Glover, lowered his hands out of view and moved around. Sergeant Lowrey immediately

ordered appellant to raise his hands and appellant did. But when Glover was again ordered to exit, appellant again lowered his hands out of view and moved around. "This process went on about ten times."

Finally, after Hines, Glover, and appellant had exited, Officer Weeks searched the Hines vehicle. Hidden between the rear cushion and back rest, where appellant had been sitting, Officer Weeks found a loaded .25-caliber semiautomatic handgun and Mr. Akbire's wallet containing his identification and personal effects.

Later appellant stated to Sergeant Lowrey, "What if I had dumped that stuff?"

Before being transported to jail, appellant was placed in Officer Weeks's patrol vehicle. The next morning, Officer Van Gordon found Mr. Akbire's Timex watch in the rear seat.

Appellant did not testify.[3]

## DISCUSSION

### 1. Claimed Griffin error

The origin of the claimed *Griffin* error is an extrajudicial statement that, according to Hines and Glover, appellant made.

Glover testified appellant stated: "There is my friend that owes me some money."

Hines testified: "Mr. Font [appellant] said this guy owes me money, catch him."

Although this statement by appellant "was made other than by a witness while testifying at the hearing" (Evid. Code, § 1200) and therefore was objectionable hearsay, the prosecutor failed to object. Accordingly, this hearsay evidence was admitted without limitation. It served as state of mind evidence for Glover and Hines (1 Witkin, Cal. Evidence (3d ed. 1986) §§ 596, 599, pp. 569, 571-572) and was the basis of their defense: a good

---

[3]Glover and Hines did. They both testified that the three of them were on their way to the Commerce Club when appellant pointed to the victim, who was leaving the casino, and said the victim owed him money and Hines should "catch him." Hines then followed the victim's car until it stopped. Appellant exited alone and Hines and Glover listened to music and saw nothing. Three to five minutes later appellant entered their car and said the "mother fucker" didn't give him all the money he was owed.

faith belief appellant was attempting to collect a debt.[4] (*People* v. *Rosen* (1938) 11 Cal.2d 147 [78 P.2d 727, 116 A.L.R. 991]; *People* v. *Butler* (1967) 65 Cal.2d 569, 573 [55 Cal.Rptr. 511, 421 P.2d 703]; *People* v. *Littleton* (1972) 25 Cal.App.3d 96 [101 Cal.Rptr. 489]; *People* v. *Romo* (1990) 220 Cal.App.3d 514 [269 Cal.Rptr. 440]. But see *People* v. *Alvarado* (1982) 133 Cal.App.3d 1003, 1017 [184 Cal.Rptr. 483]. See generally, 2 Witkin & Epstein, Cal. Criminal Law (2d ed. 1988) §§ 645-647, pp. 726-729.) Moreover, because the statement was received without limitation, it also enabled *appellant*[5] to rely upon it and claim a "collection of a debt defense." (*People* v. *Rosen, supra,* 11 Cal.2d 147.) Appellant's trial counsel relied upon this defense, arguing to the jury: "If you accept the testimony of Hines and Glover, then the one thing clear is that this particular jury instruction[6] really applies to Mr. Font because they were adamant that Mr. Font said that he was owed money. That is Mr. Font believed that money was owed to him by that guy."

In his closing argument, the prosecutor responded to this "debt collection" defense as follows: "Now . . . with regards to the claim that the victim owed one of the defendants money, this is pretty laughable, when you look at it.

"First of all, it doesn't make any sense. The only testimony—we have a very very very very very very slender shred of testimony with regards to that. Mr. Akbire tells you he's never seen any of these defendants except he saw Mr. Glover on that night pointing the gun at him.

"The only thing you have is the statement of Mr. Font—excuse me—of Mr. Hines and Mr. Glover that they heard something. Now, first of all, that would be hearsay. And then you have with regards to Mr. Rich's [appellant's trial counsel] argument—

"Mr. Weiss [Glover's counsel]: Just one moment, Your Honor. Object to that statement of hearsay. That's been admitted.

"Mr. Rich: It's not, Your Honor, not for him to argue in argument what's hearsay and what is not.

---

[4]On cross-examination both Hines and Glover disclaimed any knowledge about the debt: the amount, when incurred, where incurred, etc. They both testified *they* did not know the victim.

[5]Who, not having testified, did not have to explain or provide details about the "debt."

[6]At defense request, the trial court gave the following instruction: "There exists no intent to steal or aid and abet in stealing when a person intends only to take money from another which he in good faith believes is rightfully his own. Such money need not be the identical currency or coins which such defendant so claims, but may not exceed the amount so claimed."

"Mr. Weiss: The judge and jury have heard it.

"Mr. Holmes [the prosecutor]: I'm going to ask if there are objections, make them at side bar.

"The court: The evidence came in. It's hearsay but it's subject to an exception to the hearsay rule. That's why it came in.

"Mr. Rich: I don't need to approach with that explanation.

"Mr. Holmes: The point being that all we have is the word of these two gentlemen that that statement was, that they heard that statement. *We have no evidence with regards to any state of mind of any other defendant.*

"Mr. Rich: Objection, Your Honor. I really do hate to interrupt." (Italics added.)

Appellant contends the italicized sentence is an indirect comment "on appellant's failure to testify" and constitutes *Griffin* error. Appellant is mistaken.

Before we discuss *Griffin* and what it prohibits and permits, it is useful to amplify the context of the prosecutor's comment.

First, although a jury is always aware of a defendant's not testifying (see *Griffin* v. *California, supra,* 380 U.S. 609, 614 [14 L.Ed.2d 106, 109-110]), here, appellant's failure to testify was spotlighted by Hines and Glover who not only testified but "fingered" appellant as the sole robber, the only person who exited the car and remained with the victim three to five minutes while they serenely listened to music.

Second, trial counsel for appellant—prior to the prosecutor's closing argument—focused jury attention on appellant's not having testified. He stated: "We put on no witnesses, no testimony. We relied simply upon the state of the evidence. To that [*sic*] Mr. Font gets no credit, but no blame either."

Third, prior to argument, the trial court instructed the jury and, at the request of appellant's counsel, gave CALJIC No. 2.60, which informed the jury "not to draw any inference from the fact *that a defendant does not testify.*" (Italics added.)

As the quoted argument makes plain, the prosecutor did not comment on appellant's failure to testify. Rather he commented, accurately, on the state of the evidence.

"Under the rule in *Griffin*, error is committed whenever the prosecutor or the court comments, either directly or indirectly, upon defendant's failure to testify. It is well established, however, that the rule prohibiting comment on defendant's failure to testify 'does not extend to comments on the state of the evidence or on the failure of the defense to introduce material evidence or to call logical witnesses.' " (*People* v. *Morris* (1988) 46 Cal.3d 1, 35 [249 Cal.Rptr. 119, 756 P.2d 843], disapproved of on other grounds by *In re Sassounian* (1995) 9 Cal.4th 535, 543-544, fn. 5 [37 Cal.Rptr.2d 446, 887 P.2d 527].)

In applying this standard, *People* v. *Morris* found the following prosecutorial argument *not* violative of *Griffin*:

" 'Everything comes together. The bits of the puzzle come together to fit the point of Mr. Morris. And nothing points at anybody else.

" 'Keep in mind that there is not a shred of evidence. Not a shred to suggest that anybody else did the killing, other than Oscar Lee Morris. Not a shred.

" '*There is not a shred of evidence to indicate that Oscar Morris was anywhere else on the morning of September 3, 1978.*

" 'Nothing. *Put yourself in the position of being a defendant, and you can bet your boots that if you had anything to offer by way of evidence, by way of alibi, that you would offer it.* Be assured of that. Be assured of the fact that any defense attorney would make sure that if any such evidence existed, you would have it. You don't have it.' " (*People* v. *Morris, supra,* 46 Cal.3d at pp. 35-36, italics added.)

Similarly, in *People* v. *Mincey* (1992) 2 Cal.4th 408, 446 [6 Cal.Rptr.2d 822, 827 P.2d 388] when a prosecutor stated in closing argument that " '[Defendant] was not a witness anyway,' " our Supreme Court found no *Griffin* error.

Finally, we note appellant makes no claim the prosecutor suggested an inference of guilt be drawn from appellant's failure to testify. In such circumstances "indirect, brief and mild references to a defendant's failure to testify, without any suggestion that an inference of guilt be drawn therefrom, are uniformly held to constitute harmless error." (*People* v. *Hovey* (1988) 44 Cal.3d 543, 572 [244 Cal.Rptr. 121, 749 P.2d 776]; *People* v. *Mincey, supra,* 2 Cal.4th 408, 446-447.)

The contention is without merit.

## 2.  *The firearm allegation (§ 12022, subd. (a)(1))*[7]

Appellant contends the armed-with-a-firearm allegation is only vicarious and cannot be sustained because the jury did not find that either Hines or Glover was armed with a firearm. Appellant is mistaken.

There was evidence Glover was armed with a firearm. The victim so testified. That evidence, itself, supports the allegation. The jury's inability to agree that Glover was guilty of *robbery* is not inconsistent with the jury's finding that the armed allegation was true.

There was also evidence, the testimony of Glover and Hines, that appellant was the sole robber and, impliedly, the person armed with the firearm. That evidence, itself, also supports the jury's finding.

Finally, there was evidence that appellant possessed and hid the firearm when stopped by Sergeant Lowrey and inferentially possessed it earlier, during commission of the robbery.

The jury was not required to select among these legally sufficient alternatives. (See generally, *People* v. *Santamaria* (1994) 8 Cal.4th 903, 917-921 [35 Cal.Rptr.2d 624, 884 P.2d 81].)

### DISPOSITION

The judgment is affirmed.

Lillie, P. J., and Johnson, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 23, 1995.

---

[7]The subdivision provides: "(a)(1) Except as provided in subdivisions (c) and (d), any person who is armed with a firearm in the commission or attempted commission of a felony shall, upon conviction of that felony or attempted felony, in addition and consecutive to the punishment prescribed for the felony or attempted felony of which he or she has been convicted, be punished by an additional term of one year, unless the arming is an element of the offense of which he or she was convicted. This additional term shall apply to any person who is a principal in the commission or attempted commission of a felony if one or more of the principals is armed with a firearm, whether or not the person is personally armed with a firearm."