Filed 11/25/13  P. v. Bertram CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

|  |  |
|---|---|
| THE PEOPLE, | C067175 |
| Plaintiff and Respondent, | (Super. Ct. No. 103118) |
| v. | |
| THOMAS WESLEY BERTRAM, | |
| Defendant and Appellant. | |

A jury found defendant Thomas Wesley Bertram guilty of using personal identifying information of another to obtain credit, goods or services in another's name. (Pen. Code, § 530.5, subd. (a).)[1]  Sentenced to three years in state prison, defendant

---

[1] Undesignated statutory references are to the Penal Code.

1

appeals. He contends the prosecutor impermissibly shifted the burden of proof and committed *Griffin*[2] error in her rebuttal closing argument.

We reject defendant's contentions and affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

Defendant and his son, Thomas Aaron Bertram (Aaron), have the same first names and surnames, although they have different middle names. In 2009, Aaron applied for unemployment benefits but he was unable to qualify. During the course of his application process, he was informed that the unemployment office had records of his employment at two different jobs. As Aaron had only been working at one job, he inquired into the matter. Upon further inquiry, Aaron discovered the name and address of the supposed employer -- Hatanaka Farms. He had never, in fact, worked for Hatanaka Farms.

Aaron visited Hatanaka Farms and spoke with the bookkeeper, who pulled the employee file containing records listed in his name. The records in the file included a federal W-4 form and an I-9 Employment Eligibility form, both bearing Aaron's social security number. Aaron recognized the handwriting on the completed forms and the signature on the I-9 form as that of defendant. Additionally, the W-4 form included a middle initial -- "W." The file also contained an identification photo, which was a photo of defendant.

As Aaron had not given defendant permission to use his social security number, he went to the sheriff's office and made a report. He also talked to defendant, who claimed he had never worked for, or even heard of, Hatanaka Farms. Defendant posited that Aaron's maternal uncle, or perhaps an illegal immigrant, had used Aaron's identifying information.

---

[2] *Griffin v. California* (1965) 380 U.S. 609 [14 L.Ed.2d 106] (*Griffin*).)

2

Defendant was arrested and questioned. He continued to deny ever working for Hatanaka Farms and claimed to have been working for a different company during the time period in question. Hatanaka Farms' business records, however, established that defendant had been employed with the company beginning on January 28, 2009, through at least 11 pay periods. David Hatanaka, the owner of Hatanaka Farms, testified that his company employs between 20 and 60 employees at various times of the year and he is familiar with every employee. He has known defendant for about 40 years, since high school. He personally saw defendant working as a truck driver for his business during each of the 11 pay periods. Defendant was paid a salary, with deductions for federal and state taxes, social security contributions, and contributions to state disability insurance, based on the social security number defendant provided.

This was not the first time defendant had used Aaron's identity. On February 1, 2004, defendant used Aaron's social security number, without his permission, on an application for a credit card at Home Depot. Aaron learned of this incident when Experian or another credit reporting agency contacted him to inform him of an attempt to open an account in his name. When Aaron was shown the application bearing his social security number, he recognized defendant's handwriting and signature on it. A police officer stopped a car in which defendant was a passenger and asked if any of the car's occupants had just applied for a Home Depot credit card. Defendant said he had applied for credit but there was a problem with his credit. He claimed that two years earlier, his brother-in-law had stolen his identity, and his credit had since been "flagged." Defendant claimed to be on his way to correct the "misunderstanding" and the officer let him go. Later, after the officer received a call from "a different subject named Thomas Bertram," he called defendant to speak with him again. After the officer informed defendant that there may be some criminal issues relating to the social security number that was written on the application, defendant claimed he might have "inadvertently"

3

entered his son's social security number on the credit application. Defendant was not arrested in connection with the 2004 incident.

Defendant was charged in a single count information with using personal identifying information of another to obtain credit, goods or services in another's name, in violation of section 530.5, subdivision (a).

Defendant did not testify. He called one witness, who testified that defendant had used his own social security number and his true date of birth on forms related to drug testing at Hatanaka Farms.

**DISCUSSION**

Section 530.5, subdivision (a), provides: "Every person who willfully obtains personal identifying information . . . of another person, and uses that information for any unlawful purpose, including to obtain, or attempt to obtain, credit, goods, services, real property, or medical information without the consent of that person, is guilty of a public offense." The jury was instructed that: "Someone commits an act willfully when he or she does it willingly or on purpose. An unlawful purpose includes unlawfully obtaining [or] attempting to obtain credit, or goods or services or real property or to commit a crime." The jury was further instructed on the elements of the crimes of perjury (§ 118) and tax evasion (Rev. & Tax. Code, §§ 19708, 19709).

During closing argument, the prosecutor discussed the evidence as it related to each element of the charged offense, including the evidence of perjury and tax evasion. Defense counsel then argued at length that the prosecution had failed to prove defendant had attempted to commit perjury or tax evasion, or had any unlawful purpose at all for using his son's social security number. Defense counsel also argued briefly that defendant had not willfully used his son's social security number, and then, in her closing remarks, argued as follows:

"So now what happens is because the government has the burden of proving beyond a reasonable doubt, she has the burden of changing the status quo because the

4

status quo is the presumption of innocence that was at the beginning of this trial, and it remains all the way until your verdict comes in.  The presumption of innocence is something that [defendant] and every single one of us is guaranteed.  It is the way our criminal justice works.

"[The prosecutor] wants you to change the status quo.  She wants you to go from the presumption of innocence to guilt based on the evidence in this case.  Because that burden is so high, it is beyond a reasonable doubt, she gets to go again and I don't.  And it is not because I wouldn't love to rebut whatever she's going to tell you next, but because it is not my burden, it is her burden.  And because that burden is so high, she gets to talk to you one more time."

The prosecutor then commenced her rebuttal argument, focusing on the element of using the information for an unlawful purpose, arguing defendant used his son's social security number to "hid[e] the money."  She concluded her argument as follows:

"What it comes down to is whether the defendant wrote down that social security number, and when he did it, why did he do it.  We have shown, and it is very clear beyond a reasonable doubt, that the defendant did it for his own unlawful purposes.  He didn't do it to help his son.  He didn't do it on mistake.  There's been no evidence of a lawful purpose because --"

Defense counsel then objected, stating, "That's improper burden shifting."  The objection was overruled and the prosecutor continued as follows:

"There is no evidence, and all you can use in this case is evidence that was presented.  There's no evidence --"

Defense counsel interjected with the same objection and the prosecutor continued, concluding, "There is no evidence other than the unlawful purposes that have been presented to you of what the defendant was doing.  And, again, he wasn't hiding himself, he was hiding the money.  [¶]  Hold him accountable and find him guilty."

5

Defendant contends the prosecutor's final remarks in her rebuttal argument impermissibly shifted the burden of proof and constituted *Griffin* error.

## I.  Burden Shifting

Defendant contends that the prosecutor's remarks in her rebuttal closing argument "improperly shifted" the burden of proof to him.  He argues the prosecutor misstated the law by telling the jury that he, rather than the People, had the burden of proof.

"[I]t is improper for the prosecutor to misstate the law generally (*People v. Bell* (1989) 49 Cal.3d 502, 538), and particularly to attempt to absolve the prosecution from its prima facie obligation to overcome reasonable doubt on all elements (*People v. Gonzalez* (1990) 51 Cal.3d 1179, 1215)."  (*People v. Marshall* (1996) 13 Cal.4th 799, 831 (*Marshall*).)  "When the claim focuses on the prosecutor's comments to the jury, we determine whether there was a reasonable likelihood that the jury construed or applied any of the remarks in an objectionable fashion."  (*People v. Booker* (2011) 51 Cal.4th 141, 184-185.)

Defendant claims that "[b]y arguing '[t]here's been no evidence of a lawful purpose . . . , [t]here is no evidence and all you can use is evidence that was presented--,' and '[t]here's no evidence other than the unlawful purposes that have been presented to you of what the defendant was doing,' the prosecution's statements could reasonably be interpreted as suggesting to the jury the prosecution did not have the burden of proving that critical element of the crime beyond a reasonable doubt."  We reject his strained interpretation of the prosecutor's argument.

The prosecutor had discussed the evidence supporting the elements of the offense in her initial closing argument and her rebuttal, which included a discussion of the evidence upon which she was relying to establish defendant's unlawful purpose for using his son's social security number -- to hide the money in order to commit tax evasion and/or to commit perjury.  When the prosecutor made the challenged comment, she made it in the context of a proclamation that she had succeeded in establishing all the

6

elements of the offense, including unlawful purpose, beyond a reasonable doubt. A reasonable juror would not construe the prosecutor's argument in the manner in which defendant complains.

This is particularly true in light of the trial court's instructions. At the beginning of the trial, the trial court told the jury, "[t]he prosecution has the burden of proving this case. The defense has no burden. They can remain silent throughout this trial . . . ." The court went on to instruct, "[a] defendant is entitled to remain silent, if that is his decision. It is a constitutional right each of us possess. Therefore, if he chooses to exercise that right and not testify, you can't use that against [defendant]. You can't use it to help the prosecution, and I would appreciate your understanding that. At the end of the trial, the trial court gave the standard instructions, telling the jury that: (1) a defendant is presumed innocent; (2) a defendant has an absolute constitutional right not to testify, and the fact that he did not testify cannot be considered for any reason; and (3) the prosecution must prove the elements of the offense beyond a reasonable doubt and defining reasonable doubt. In fact, the jury was instructed at least five times that the People had the burden of proof. Additionally, numerous other instructions were couched in terms of what the People must prove and the burden of proof. And, as we have noted, defense counsel had just emphasized the prosecution's burden of proof in her closing argument.

In the context of the whole argument and instructions, there is simply no reasonable likelihood the jury construed the prosecutor's remarks as placing on defendant the burden of proof or of establishing a reasonable doubt as to his guilt. (See *Marshall*, *supra*, 13 Cal.4th at pp. 831-832.)

## II. *Griffin* Error

In a related argument, defendant contends the prosecutor's remarks impermissibly commented adversely on his exercise of the Fifth Amendment privilege against self-

7

incrimination -- commonly referred to as *Griffin* error. (Cf. *Griffin*, *supra*, 380 U.S. 609.) We reject this contention, as well.

Defendant did not object to the prosecutor's remark on this ground. Instead, the objection was limited to "improper burden shifting," which we have already rejected. Considering the brevity of the comment and the unlikelihood that an adverse inference would be drawn, the failure to object to the argument on this ground bars defendant from raising the issue here. (*People v. Mincey* (1992) 2 Cal.4th 408, 446 (*Mincey*).) And, in any event, it was not *Griffin* error, so there was no cause to object on those grounds.

The doctrine of *Griffin* error bars the prosecutor from arguing that the jury should draw an inference adverse to the defendant because he did not testify at trial in reliance on his Fifth Amendment privilege against self-incrimination. (*Griffin*, *supra*, 380 U.S. at p. 615.) Defendant asserts the prosecutor's reference to the nonexistence of evidence of any lawful purpose for defendant's acts was a comment on his failure to testify because the evidence of the unlawful purpose could be contradicted only by defendant testifying on his own behalf, as only defendant knows why he used his son's social security number.

First, as we have noted, the jury was properly instructed on defendant's right not to testify at the beginning and end of the trial.

Second, it is well settled that "the prosecutor may comment on the state of the evidence, including the failure of the defense to introduce material evidence or to call witnesses." (*Mincey*, *supra*, 2 Cal.4th at p. 446.) The lack of evidence is a proper subject for argument. (*People v. Lewis* (2001) 25 Cal.4th 610, 670-671.) Here, the prosecutor did not impermissibly argue that the People's evidence was uncontradicted or unrefuted because defendant failed to take the witness stand. (See, e.g., *People v. Medina* (1974) 41 Cal.App.3d 438, 459-460.) She commented on the state of the evidence. The mere fact that the evidence, or lack thereof, related to defendant's state of mind or intent does not render the comment *Griffin* error. (See *People v. Font* (1995) 35 Cal.App.4th 50, 56;

see also *People v. Medina* (1995) 11 Cal.4th 694, 755-756 & *People v. Hughes* (2002) 27 Cal.4th 287, 374.)  Moreover, defendant's intent could be established through means other than defendant's direct testimony.  The People had presented evidence of defendant's unlawful purposes for using his son's identity.  There was no evidence to suggest any lawful purpose for using his son's identity.  The prosecutor's comment on that state of the evidence was not *Griffin* error.

## DISPOSITION

The judgment is affirmed.




                                                            MURRAY            , J.




We concur:



          RAYE            , P. J.


        NICHOLSON         , J.