Filed 1/22/24  P. v. Wilson CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C096792 |
| Plaintiff and Respondent, | (Super. Ct. No. 21FE000917) |
| v. | |
| MARQUESS TRAVON WILSON, | |
| Defendant and Appellant. | |

Defendant Marquess Travon Wilson was convicted of several offenses related to the armed robbery of a woman and her son.  He was sentenced to an aggregate term of 62 years to life.  On appeal, he claims instructional error deprived him of his right to a fair trial.  He also claims the trial court made erroneous sentencing decisions, including that it misunderstood its discretion to impose concurrent sentences on his two robbery convictions.  We agree the matter must be remanded for a new sentencing hearing so the trial court can exercise its discretion to impose concurrent or consecutive sentences on the two robbery convictions, but otherwise affirm defendant's convictions.

1

## LEGAL AND FACTUAL BACKGROUND

When S.D.[1] arrived at her home after 10:00 p.m. one night, a man approached her car with a handgun and put it to her head, demanding money. The man followed S.D. into her home. Once inside, the man ordered her to lie down on the floor in her room while he took her watch from the dresser, her rings from her person, purses, shoes, perfume bottles, designer sunglasses, makeup bag, makeup products, and her hair straightener (collectively worth many thousands of dollars) and stuffed them into a red suitcase owned by S.D. Although the man was masked and wore gloves, S.D. was able to identify him as defendant.

Defendant then went into S.D.'s eight-year-old son E.B.'s room, and took E.B.'s PlayStation5 and its controller, and E.B.'s red iPhone, both of which S.D. had bought for him. E.B. did not see a gun while defendant took the items. The defendant left the house with S.D.'s red suitcase.[2]

S.D. called 911.[3] She told the 911 operator that she recognized the man who robbed her as "Roach,"[4] an acquaintance whom she later learned was defendant.

Officer Ricky Lazaro took S.D.'s statement at her home, which was recorded on his body-worn camera.[5] S.D. said she recognized the person who robbed her as

---

[1] S.D. was a reluctant witness and often stated she did not recall the incident or her contact with law enforcement. However, she also testified that the account of the incident she gave to the police was true. The details of the incident were largely introduced through her recorded interviews with law enforcement.

[2] Ring camera video recordings (People's exhibit No. 46) were played at trial.

[3] Recordings of S.D.'s 911 calls (People's exhibit No. 39) were played at trial.

[4] Defendant's Instagram account handle was "off_white_Roach."

[5] A video recording of S.D.'s interview (People's exhibit No. 40) was played at trial.

"Marcus," also known as "Roach" and she identified a photo of defendant as the offender. S.D. later told Detective Bogdan Kostyuk that she recognized the gunman's voice as defendant's voice, although she also told Detective Kostyuk that she had never spoken with defendant.

At trial, S.D. said that she did not recognize defendant, claimed that she had never seen or spoken with him before, and denied having a dating relationship with him. S.D. denied that defendant had ever bought her or given her anything. S.D. testified that the watch was a gift from someone other than defendant. She also testified that she "had those rings for a really long time."

Detective Kostyuk testified that about 20 minutes before S.D. was robbed, a car associated with defendant was seen at an intersection close to S.D.'s home. Officers later found that car a few hundred feet from defendant's known address. L.D., defendant's wife, was at the car. L.D. told the officer that her cousin and her cousin's boyfriend had driven her car that day. A search of the car's trunk revealed S.D.'s red suitcase. The police later returned several items to S.D., including the suitcase, E.B.'s PlayStation5 and its controller, E.B.'s red iPhone, S.D.'s shoes, purses, and a bag of perfumes.

L.D. testified that her marriage to defendant began as an open relationship during which he had relationships with about four other women, with an implication that S.D. was one of them. L.D. knew that defendant had bought items for other women. L.D. understood that defendant supposedly had bought high-end items for S.D., but L.D. did not know what those items were. L.D. maintained that defendant did not have access to her car the night of the robberies. She asserted that she had no idea how the suitcase got into her car's trunk.

Defendant told L.D. that he had gone to S.D.'s to get his "stuff back." Defendant did not specifically tell L.D. that stuff included items that he had bought for S.D.

3

Defendant's mother testified that she recognized S.D. from Facebook photos as someone whom she had seen defendant kiss and hug several times, while he was married to L.D.

K.A., who knew defendant and S.D. as family friends, saw them together on many occasions and he knew that they had dated on and off from the end of 2018 into 2020. On four or five occasions, K.A. dropped defendant off at S.D.'s home late at night. K.A. occasionally shopped with defendant for gifts — jackets, shoes, purses, perfume, including stolen or bootleg knockoff items — for K.A.'s girlfriend and defendant's wife and girlfriend.

K.A. never shopped with defendant at a jewelry store because "[defendant] don't really do the jewelry thing." K.A. testified that defendant would drop off some of the gifts, including non-knockoff sets of matching shoes and purses, at S.D.'s home. From what K.A. saw, defendant bought S.D. about $15,000 worth of clothes. K.A. testified that defendant's gifts to S.D. would be for her to keep because that is "usually how you do gifts."

The prosecutor charged defendant with: two counts of first degree robbery (Pen. Code, § 211;[6] counts one & two); possessing a firearm as a prohibited person (§ 29800, subd. (a)(1); count three), and first degree burglary (§§ 459, 462, subd. (a); count four) while a person other than an accomplice was present (§ 667.5, subd. (c)(21)). Counts one and two alleged that he personally used a firearm (§ 12022.53, subd. (b)) and that he committed the offenses while released on bail (§ 12022.1) in two other cases. And the information alleged that he had prior strike convictions (§§ 667, subds. (b)-(i), 1170.12) in 2014 for battery with serious bodily injury (§ 243, subd. (d)) and in 2011 for assault with a firearm (§ 245, subd. (a)(2)).

---

**6**      Undesignated statutory references are to the Penal Code.

4

The jury found defendant guilty on all counts and found true the firearm allegations associated with counts one and two.

During the sentencing hearing, defendant admitted both prior strike conviction allegations. The court then struck the firearm enhancement associated with count two pursuant to section 1385. The court denied defendant's motion to dismiss his prior strike convictions under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497. Despite defendant's earlier admission that he had been on bail on the date of the offenses, the prosecution withdrew the on-bail allegations, which the court dismissed.

The trial court sentenced defendant to prison for an aggregate term of 62 years to life: 25 years to life, plus 10 years for the firearm-use enhancement on count one; a consecutive term of 25 years to life on count two; and a consecutive term of two years on count three. On count four, the court imposed a four-year term, which it stayed pursuant to section 654.

Defendant timely filed a notice of appeal.

## DISCUSSION

### I

### *Jury Instructions*

Defendant argues that instructional error deprived him of his right to a fair trial. Specifically, he claims that the jury should have been instructed on his defense that he had a claim of right to the property he took from S.D.'s home (CALCRIM No. 1863) and the instruction allowing the jury to infer guilt from his flight from S.D.'s home (CALCRIM No. 372) was improper and not supported by the evidence. We disagree.

Errors in jury instructions are questions of law, which we review de novo. (*People v. Guiuan* (1998) 18 Cal.4th 558, 569; *People v. Jandres* (2014) 226 Cal.App.4th 340, 358.)

5

### A. *Claim of Right*

Defendant first contends that the jury could have concluded from the evidence that he was simply retrieving his own property from S.D. Consequently, he argues, the trial court had a sua sponte obligation to instruct the jury on claim of right as a defense with CALCRIM No. 1863. Alternatively, he asserts that his attorney was ineffective in failing to request such an instruction. Neither claim has merit.

"Robbery is the felonious taking of personal property in the possession of another, from his person or immediate presence, and against his will, accomplished by means of force or fear." (§ 211.) In *People v. Tufunga* (1999) 21 Cal.4th 935, 947, the California Supreme Court affirmed that, as at common law, claim of right remains a viable defense to a charge of robbery. "The claim-of-right defense provides that a defendant's good faith belief, even if mistakenly held, that he has a right or claim to property he takes from another negates the felonious intent necessary for conviction of theft or robbery." (*Id.* at p. 938.) Such a belief, even if mistakenly held, is sufficient to preclude felonious intent because "[f]elonious intent exists only if the actor intends to take the property of another without believing in good faith that he has a right or claim to it." (*People v. Butler* (1967) 65 Cal.2d 569, 573, overruled on another ground in *Tufunga*, at p. 956.)

The bench notes to CALCRIM No. 1863 state that there is a split of authority among appellate courts as to whether a court has a sua sponte duty to instruct on a claim of right. However, this split appears to have been resolved when, several years after *Tufunga* was decided, our state Supreme Court clarified that because the asserted claim of right serves only to negate the intent to steal (mens rea) element of the robbery charges, where the trial court otherwise properly instructed the jury on this element, it has no sua sponte duty to instruct on the defense. (*People v. Covarrubias* (2016) 1 Cal.5th 838, 874.) Defendant does not argue that the instructions on mens rea were otherwise deficient. In his reply brief, defendant concedes that, in light of *Covarrubias*, the trial court here had no sua sponte duty to instruct the jury and that any request for the jury

6

instruction had to have come from counsel.  (See *ibid.*)  Thus, we reject defendant's claim that the court had a sua sponte obligation to instruct the jury with CALCRIM No. 1863.

Moreover, we will not fault defense counsel for failing to request the instruction on a claim-of-right defense because the evidence in this case did not warrant giving it.  In arguing otherwise, defendant maintains that he was in a relationship with S.D. and frequently took things to her house.  When they broke up, defendant argues, he merely "got his stuff back" from S.D.  Yet defendant's good faith belief in a claim of right must relate to specific property (*People v. Tufunga, supra*, 21 Cal.4th at p. 950), and " 'be something more than a vague impression' "; defendant must have a bona fide claim (*People v. Photo* (1941) 45 Cal.App.2d 345, 353).  Defendant has failed to establish the nature of his claim of right or to relate it to the specific property he took from S.D.  (See *People v. Covarrubias, supra*, 1 Cal.5th at p. 875 [insufficient evidence to support instructing the jury on claim of right where, in part, there was no evidence that either defendant claimed an ownership interest in the two handguns the defendant took from the victims].)  Instead, defendant vaguely asserts that he had a claim of right to everything he took, by virtue of his relationship with S.D.  As a matter of law, this is insufficient to support a claim-of-right defense.

Additionally, there is no factual support for his claim.  We first note that common sense informs that most people who seek the return of property they believe they rightfully own, don't wear a mask concealing their identity, or display a firearm when seeking the property's return.  Additionally, there is no evidence that defendant owned the property he took from S.D.'s home.  Nor is there any evidence that defendant bought or gifted S.D. any of the items he took from her home.  The evidence demonstrates that many of the items taken were those that defendant did not purchase or own at all.  For example, E.B. testified that his mother bought him the PlayStation5 and iPhone.  S.D. testified that her watch was a gift from someone other than defendant and that she had her rings "for a really long time."  Indeed, K.A. testified that defendant did not really buy

7

jewelry for his girlfriends. S.D. also testified that either she bought or was gifted by someone other than defendant, several purses. There was no evidence introduced to the contrary.

Although witnesses testified that defendant often bought items for S.D., the testimony regarding the gifts was vague and did not necessarily include the items taken. L.D. testified she knew defendant had bought items worth thousands of dollars for S.D. but could not identify the items. Defendant's mother also testified she knew defendant and S.D. were dating and that "he was buying stuff for the girl that he was dating," but never specified the items bought. Finally, K.A. testified that he had shopped with defendant to get gifts for defendant's girlfriends, who included S.D. According to K.A., these gifts fell into the same category as those taken: "Jackets, shoes, like, purses, just stuff that — perfume or something, earrings, okay, something you think your girl would like." Like the other witnesses, however, K.A. never identified the items taken as gifts originally bought by defendant. Finally, even if we were to assume defendant bought the items he later took from S.D.'s home, there is no evidence he retained any ownership interest in any item.

We conclude there is not substantial evidence to support a claim-of-right defense. Therefore, even upon request, defendant was not entitled to instruction on such a defense. (*People v. Covarrubias, supra*, 1 Cal.5th at p. 875; see also *People v. Alvarado* (1982) 133 Cal.App.3d 1003, 1022 [the trial court's refusal to give instruction on claim-of-right defense was proper where the defendants "conducted a general ransacking of the bedroom indiscriminately taking items of value never specifically related to any claim of right"].) Defense counsel cannot be faulted for failing to request an instruction for which there was no evidentiary support. (See *People v. Price* (1991) 1 Cal.4th 324, 387 ["Counsel does not render ineffective assistance by failing to make motions or objections that counsel reasonably determines would be futile"], superseded by statute on other grounds as stated in *People v. Hinks* (1997) 58 Cal.App.4th 1157, 1161-1165.)

8

## B. Defendant's Flight

During the conference on jury instructions, defendant objected to CALCRIM No. 372, which instructed the jury that his flight could be considered as a factor to infer his guilt. Defendant argued that because there was no evidence he knew S.D. had called 911 and that he simply walked away from her house, there was no evidence he fled after retrieving his property. The prosecution disagreed, arguing that the circumstances around the robbery, i.e., wearing a mask, gloves, driving away from the scene, and being absent when the police arrive at his known address, all support the conclusion that defendant acted in a manner to avoid arrest. The court overruled defendant's objection, finding that because the prosecution planned to argue flight, the court had a sua sponte obligation to issue the instruction. The court noted, however, that the language of the instruction allowed the jury to conclude whether defendant fled at all and, if so, the meaning and importance of that conduct.

Section 1127c requires a trial court to give a flight instruction "where evidence of flight . . . is relied upon as tending to show guilt." (§ 1127c; see also *People v. Howard* (2008) 42 Cal.4th 1000, 1020.) In such cases, the statute requires the court to "instruct the jury substantially as follows: [¶] The flight of a person immediately after the commission of a crime, or after [the person] is accused of a crime that has been committed, is not sufficient in itself to establish [the person's] guilt, but is a fact which, if proved, the jury may consider in deciding [the person's] guilt or innocence. The weight to which such circumstance is entitled is a matter for the jury to determine." (§ 1127c.) "CALCRIM No. 372 is merely a distillation of the instructional duty imposed . . . by . . . section 1172c." (*People v. Pettigrew* (2021) 62 Cal.App.5th 477, 499.)

Our Supreme Court has interpreted section 1127c as mandating a rule that when the prosecution introduces evidence the defendant fled, " 'and if such evidence is relied on as tending to show guilt, then a flight instruction is proper.' " (*People v. Abilez* (2007) 41 Cal.4th 472, 521-522.) Specifically, " '[a] flight instruction is proper whenever

9

evidence of the circumstances of [a] defendant's departure from the crime scene . . . logically permits an inference that his movement was motivated by guilty knowledge.' " (*Id*. at p. 522.) " ' " [F]light requires neither the physical act of running nor the reaching of a far-away haven. [Citation.] Flight manifestly does require, however, a purpose to avoid being observed or arrested.' " ' " (*People v. Leon* (2015) 61 Cal.4th 569, 607.) "Evidence that a defendant left the scene is not alone sufficient." (*People v. Bonilla* (2007) 41 Cal.4th 313, 328.)

Section 1127c notwithstanding, "[i]t is error to give an instruction which, while correctly stating a principle of law, has no application to the facts of the case." (*People v. Guiton* (1993) 4 Cal.4th 1116, 1129.) There must be " 'substantial evidence of flight by the defendant . . . from which the jury could reasonably infer a consciousness of guilt.' " (*People v. Pensinger* (1991) 52 Cal.3d 1210, 1245.) " 'The evidentiary basis for the flight instruction requires sufficient, not uncontradicted, evidence.' [Citation.]" (*People v. Pettigrew, supra*, 62 Cal.App.5th at p. 499.)

Defendant contends the evidence is too slight to support the inference that he fled from S.D.'s home, since there is no evidence that he knew the police had been called, nor any indication that he left because he feared apprehension or arrest. Similar challenges to the predecessor standard jury instruction on flight (CALJIC No. 2.52) were rejected in *Abilez* and *Bonilla*.

In *Abilez,* the defendant contended that "giving the [flight] instruction was error because there were 'no facts' suggesting his decision to leave the victim's home was motivated by a desire to avoid detection or apprehension for the murder." (*People v. Abilez, supra*, 41 Cal.4th at p. 522.) Our state Supreme Court disagreed that the facts at trial (showing that after the victim was killed, the defendant and codefendant loaded items from the victim's home into her car and drove off before being apprehended several miles away) were insufficient to support the instruction. It explained, based on the evidence, that "the jury could reasonably infer that [the] defendant's decision not to stay

10

in the house [after the victim was killed], but instead to leave, manifested a consciousness of guilt." (*Ibid.*)

Similarly in *Bonilla*, the defendant challenged the flight instruction, claiming "there was no substantial evidence he fled" after the murder. (*People v. Bonilla, supra*, 41 Cal.4th at p. 328.) The court clarified that "[t]o obtain the instruction, the prosecution need not prove the defendant in fact fled, i.e., departed the scene to avoid arrest, only that a jury *could* find the defendant fled and permissibly infer a consciousness of guilt from the evidence." (*Ibid.*) Based on evidence that the defendant "immediately left the scene" (*id.* at p. 329) and did nothing that "might have led to [his] detection at the scene or otherwise connected him with the attack" (such as calling out or attempting to render aid), the court concluded it was not error to give the instruction. (*Ibid.*) In so concluding, the court reasoned that while "[t]he jury could attribute an innocent explanation to [the defendant's] conduct, . . . it could also infer that his departure and the circumstances thereof were consistent with and supported the prosecution's theory," thus justifying the giving of the instruction. (*Ibid.*)

Here, the evidence at trial was that defendant robbed S.D. In preparation to leave, he packed several of S.D.'s items into one of her suitcases and walked away. He kept his gloves on while he left. Finally, the suitcase full of the items taken from S.D. was found in defendant's wife's car. A jury could find defendant committed those acts in an attempt to avoid a connection between himself and the robbery and the jury could infer that defendant demonstrated consciousness of guilt as he left S.D.'s house. We conclude the court did not err in instructing the jury on flight.

Nevertheless, defendant claims that the purported error violated his right to state and federal due process because it relieved the prosecution of its burden to prove each element beyond a reasonable doubt. Our state Supreme Court has repeatedly rejected that argument. (*People v. Boyce* (2014) 59 Cal.4th 672, 691; see also *People v. Jackson* (1996) 13 Cal.4th 1164, 1223-1224, abrogated in part on another point as stated in

11

*McGee v. Kirkland* (C.D.Cal. 2009) 726 F.Supp.2d 1073, 1080.) Rather, we review this type of error for prejudice under the state-law standard, asking whether it was "reasonably probable [the defendant] would have fared any better had the trial court not given the flight instruction." (*People v. Pettigrew, supra*, 62 Cal.App.5th at p. 502; *People v. Watson* (1956) 46 Cal.2d 818, 836.)

Even if the court erred in providing the flight instruction, we conclude any potential prejudice was minimal. First, as the parties both recognize, the prosecution did not argue that the jury should infer guilt from defendant's flight. Next, other aspects of the jury instructions minimized any prejudicial impact from the flight instruction. CALCRIM No. 372 itself does not assume that flight is established, instructing the jury that "[*i*]f you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct." (Italics added.) Also, the jury was instructed under CALCRIM No. 200 that some of the instructions read "may not apply, depending on [the jury's] findings about the facts of the case." Thus, the jury was informed that it had "to decide for itself" whether defendant's departure from the scene "had any relevance when deciding guilt and . . . if it decided the evidence was irrelevant, it knew to disregard the flight instruction." (*People v. Pettigrew, supra*, 62 Cal.App.5th at p. 502.)

Finally, evidence of defendant's guilt was strong. The evidence suggested a prior dating relationship between defendant and S.D. and that defendant had been to S.D.'s house on several previous occasions. Immediately after the robbery, S.D. identified defendant as the robber. Defendant told L.D. that he had gotten his things back from S.D. and S.D.'s red suitcase with her belongings were later found in L.D.'s car at an address associated with defendant. No evidence suggested someone other than defendant robbed S.D.

In short, even if insufficient evidence supported the flight instruction, there is no reasonable probability of a better result had the instruction not been given. Defendant's claim of instructional error fails.

12

## II

### *Sentencing*

Defendant argues, and the People agree, that the trial court misunderstood the scope of its discretion to impose concurrent terms on defendant's two robbery convictions. We agree with the parties, and we remand the matter for a full sentencing hearing.

#### A.  *Additional Background*

At the sentencing hearing, the parties disagreed as to whether consecutive sentences were mandatory. Defense counsel argued, inter alia, that the court had the discretion to impose concurrent sentences under California Rules of Court, rule 4.425. In response, the prosecutor argued that, although "section 654 provides it in the abstract," concurrent sentences were inappropriate because two victims were involved and that, given defendant's prior strikes, consecutive sentences were mandatory.

The trial court observed that section 667, subdivision (e)(2)(B) provided "the indeterminate term described in subparagraph (a) shall be served consecutive to any other term of imprisonment for which the consecutive term may be imposed." After researching the issue further, the court stated: "The statute is clear it's consecutive. [¶] The question becomes do we have any recent decisions like we've had recently that are saying the Court does have discretion." After a pause in the proceedings, the court remarked, "I'm not finding anything to lead me to believe the statute has been changed by case law" and that subdivision "([e])(2)([B]) is the controlling law."

The trial court imposed an aggregate term of 62 years to life, which included two terms of 25 years to life on both robbery convictions and a two-year term for being a felon in possession of a weapon on count three. The court remarked that, if on appeal it was determined that the court had discretion, then it would impose a concurrent sentence on count two. The court reasoned: "[T]his was really a sweep through" and "[t]he intended target really of the whole thing . . . was [S.D.] and that it was sort of a pass by,

13

run in, grab that Play[S]tation5." The court mentioned that in "looking at some of the factors, [rule] 4[.]425 for consecutive[,] the [crimes] and objectives were predominantly independent of each other, I don't think so. I think it's the same sweep." The court further stated: "The crimes here involved separate acts of violence, that's the potential, except there was really no violence or overt threats to [E.B.] [¶] They weren't really committed at separate times and places. Again, this was a sweep."

### B. Analysis

When a defendant has two strikes, as does defendant here, he receives an indeterminate term under section 667, subdivision (e)(2)(A). Section 667, subdivision (e)(2)(B) provides: "The indeterminate term described in subparagraph (A) shall be served consecutive to any other term of imprisonment for which a consecutive term may be imposed by law. Any other term imposed subsequent to an indeterminate term described in subparagraph (A) shall not be merged therein but shall commence at the time the person would otherwise have been released from prison." Finally, section 667, subdivision (c) provides in relevant part: "Notwithstanding any other law, if a defendant has been convicted of a felony and it has been pled and proved that the defendant has one or more prior serious or violent felony convictions as defined in subdivision (d), the court shall adhere to each of the following: [¶] . . . [¶] (6) If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e)." (§ 667, subd. (c)(6).)

Our Supreme Court has interpreted section 667, subdivision (e)(2)(B) as speaking of both the " '*indeterminate term* described in subparagraph (A)' and '*any other term of imprisonment* for which a consecutive term may be imposed by law.' " (*People v. Hendrix* (1997) 16 Cal.4th 508, 514.) The *Hendrix* court considered the language of section 667, subdivision (c)(6), which provides: " 'If there is a current conviction for more than one felony count not committed on the same occasion, and not arising from the

14

same set of operative facts, the court shall sentence the defendant consecutively on each count pursuant to subdivision (e).' " (*Hendrix*, at p. 512, quoting § 667, subd. (c)(6).) "By its terms," said the court, "this subdivision applies to *any* current felony conviction" and "clearly provides that consecutive sentencing is mandatory for any current felony convictions 'not committed on the same occasion, and not arising from the same set of operative facts.' " (*Hendrix*, at p. 512.) The *Hendrix* court continued: "By implication, consecutive sentences are not mandatory under subdivision (c)(6) if the multiple current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.' " (*Ibid.*, quoting § 667, subd. (c)(6); see also *People v. Cartwright* (1995) 39 Cal.App.4th 1123, 1140-1141.)

The *Hendrix* court also analyzed section 667, subdivision (c)(7). It noted that "Subdivision (c)(7) provides: 'If there is a current conviction for more than one serious or violent felony as described in paragraph (6), the court shall impose the sentence for each conviction consecutive to the sentence for any other conviction for which the defendant may be consecutively sentenced in the manner prescribed by law.' " (*People v. Hendrix, supra*, 16 Cal.4th at p. 513.) It similarly reasoned that "[b]y implication, consecutive sentences are not mandated under subdivision (c)(7) if all of the serious or violent current felony convictions are 'committed on the same occasion' or 'aris[e] from the same set of operative facts.' " (*Ibid.*)

Thus, under both subdivision (c)(6) and (7) to section 667, the trial court is not mandated to impose consecutive sentences if it finds that the offenses were committed on the same occasion or arise from the same set of operative facts. (Cf. *People v. Henderson* (2022) 14 Cal.5th 34, 56 ["after the Reform Act, a trial court retains the *Hendrix* concurrent sentencing discretion when sentencing on qualifying offenses committed on the same occasion or arising from the same set of operative facts"].) Because the trial court's comments at sentencing demonstrated it did not believe it had discretion to impose concurrent terms in counts one and two, and that it would have imposed

15

concurrent sentences if it had discretion to do so, we remand the matter for a new sentencing hearing. (*Ibid*., citing *People v. Buycks* (2018) 5 Cal.5th 857, 893-895.) At that hearing the trial court must determine, pursuant to section 667, subdivision (c)(6) and (7), whether the offenses of counts one and two were committed on the same occasion or arise from the same set of operative facts. Also at that hearing, under the full resentencing rule, the trial court is free " 'to revisit all prior sentencing decisions when resentencing a defendant' (*People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425)." (*Henderson*, at p. 56.)

### III

### *Senate Bill No. 81 and the Three Strikes Law*

Defendant urges this court to find that sentencing pursuant to the "Three Strikes" law qualifies as an enhancement under section 1385, subdivision (c). He then argues section 1385, subdivision (c)(2), amended by Senate Bill No. 81 (2021-2022 Reg. Sess.) (Senate Bill 81) on January 1, 2022, requires his prior strikes be dismissed. Alternatively, defendant argues the trial court abused its discretion by denying his motion under *People v. Superior Court* (*Romero*)*, supra*, 13 Cal.4th 497. In light of the remand for a full sentencing hearing, we need not consider whether the trial court abused its discretion in ruling on defendant's *Romero* motion, as he may renew that request upon remand. However, to provide further guidance for the new sentencing hearing, we agree with the holding of our colleagues in *People v. Burke* that recent amendments to section 1385 to add specific mitigating factors a trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice, do not apply to the Three Strikes law. (*People v. Burke* (2023) 89 Cal.App.5th 237, 242-243.) Therefore Senate Bill 81's amendments to section 1385, specifically subdivision (c)(2), are not relevant to whether a prior strike should be dismissed.

16

## A. Additional Background

At the hearing, defense counsel requested the trial court strike defendant's prior strike convictions and the current sentence enhancements under section 1385. Counsel argued that new items listed in subdivision (c)(2) of section 1385, added through Senate Bill 81, provide factors to consider — not only in favor of dismissing the enhancement — but also in determining whether defendant came under the purview of the Three Strikes law.

As to count two, the trial court reduced the enhancement under section 12022.53, subdivision (b) for insufficient evidence and ultimately ordered it stricken under section 1385. In striking the enhancement, the court stated, "I've given great weight and considered the fact that more than one enhancement was charged on sentencing factors. [¶] Then the 12022.1 out on bail, those are dropped [by the prosecution]. They would otherwise have been stricken pursuant to 1385." The court noted the only remaining enhancement was pursuant to section 12022.53, subdivision (b)(1) attached to count one.

The court further stated, "On the issue of whether 1385, pursuant to [Senate Bill] 81 includes prior strike convictions as alleged here, I'm of the opinion . . . that they are two different schemes. [¶] . . . [¶] It is clear to me that there is a . . .distinction between an alternative sentencing scheme under three strikes and a sentence enhancement. [¶] I'm of the belief that the prior strikes are subject to *Romero*. The enhancements are subject to a *Romero* analysis within the context of 1385."

With respect to the prior strikes, the court stated that while it "looked at ways to strike" them, defendant did not fall outside the spirit of the Three Strikes law and denied the motion. The court stated, "If it turns out that I'm wrong on the determination that the recent laws actually do apply to a motion to strike, that is to say 1385 as modified by [Senate Bill] 81 would apply to these prior strikes, there could definitely be a different analysis on how this turns out. [¶] It certainly adds factors that I'm not considering here."

17

*B. Analysis*

Whether the amendments to section 1385 apply to prior strike convictions is a question of statutory interpretation, which we review de novo. (*People v. Tirado* (2022) 12 Cal.5th 688, 694.) "To resolve whether defendant's interpretation of the . . . statute[ ] is correct, we are guided by familiar canons of statutory construction. '[I]n construing a statute, a court [must] ascertain the intent of the Legislature so as to effectuate the purpose of the law.' [Citation.] In determining that intent, we first examine the words of the respective statutes: 'If there is no ambiguity in the language of the statute, "then the Legislature is presumed to have meant what it said, and the plain meaning of the language governs." [Citation.] "Where the statute is clear, courts will not 'interpret away clear language in favor of an ambiguity that does not exist.' [Citation.]" ' [Citation.] If, however, the terms of a statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history. [Citation.] 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute and avoid an interpretation that would lead to absurd consequences.' " (*People v. Coronado* (1995) 12 Cal.4th 145, 151.)

Under section 1385, subdivision (a) the trial court "may, . . . in furtherance of justice, order an action to be dismissed." This authority under section 1385, subdivision (a) includes the power to "strike or vacate an allegation or finding under the Three Strikes law that a defendant has previously been convicted of a serious and/or violent felony . . . ." (*People v. Williams* (1998) 17 Cal.4th 148, 158.)

Effective January 1, 2022, Senate Bill 81 (Stats. 2021, ch. 721, § 1) amended section 1385 to add specific mitigating factors the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice. (§ 1385, subd. (c); *People v. Sek* (2022) 74 Cal.App.5th 657, 674.) Section 1385, subdivision (c) now provides: "(1) Notwithstanding any other law, the court shall

18

dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute. [¶] (2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances . . . are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety."

In *People v. Burke, supra*, 89 Cal.App.5th 237, a different panel of our court reasoned that the plain language of subdivision (c) of section 1385 expressly applies to the dismissal of an "enhancement" (§ 1385, subd. (c)(1)) and that the term "enhancement" has a well-established meaning as " 'an additional term of imprisonment added to the base term.' " (*People v. Jefferson* (1999) 21 Cal.4th 86, 101, italics omitted; see *People v. Tirado, supra*, 12 Cal.5th at p. 695, fn. 9; see also Cal. Rules of Court, rule 4.405(5).) As the court in *Burke* further noted, it is "equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense. ([*People v. Superior Court* (]*Romero*[]), *supra*, 13 Cal.4th] at p. 527; *People v. Williams* (2014) 227 Cal.App.4th 733, 744.)" (*Burke*, at p. 243; see *id*. at pp. 242-244.) We agree with the conclusion in *Burke* that the plain language of section 1385, subdivision (c) is unambiguous, and applies only to enhancements, not alternative sentencing schemes. Because the Three Strikes law is not an enhancement, section 1385, subdivision (c)'s provisions regarding enhancements do not apply to the Three Strikes law. (*Burke*, at p. 244.) The trial court was not required to consider the factors in section 1385, subdivision (c)(2) when determining whether to dismiss defendant's prior strikes and did not abuse its discretion when it failed to do so.

**DISPOSITION**

The matter is remanded to the trial court with directions to conduct a new sentencing hearing.  In all other respects, the judgment is affirmed.

                                                    /s/
                                             EARL, P. J.

We concur:

_____/s/_____
RENNER, J.

_____/s/_____
ASHWORTH, J.[*]

---

[*]     Judge of the El Dorado County Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

20